otherwise promoted without objection from RPG. (Davis Decl. ¶ 40; Weiss Decl. ¶ 8.) KDI informed American Greetings that it had a then-existing relationship with RPG (which information was also publicly known), and that KDI had the ability to exit that relationship. (Davis Decl. ¶ 41; Weiss Decl. ¶ 9.) KDI informed American Greetings that RPG had certain rights to sell off certain KDI inventory in the event of the termination of the relationship. (Id.) KDI also informed American Greetings that the collection of 60 Kathy Davis greeting cards to be tested for the Company in early Spring 2008 would not be included in any business arrangement between KDI and American Greetings for calendar year 2008. (Davis Decl. ¶ 42.)

There are no restrictions in the License Agreement or any renewal that preclude KDI from entering a license agreement with or marketing the Kathy Davis "Scatter Joy" brand and/or any of the Kathy Davis greeting cards to American Greetings. (Id. Group Ex. A.) Neither KDI nor Davis has disclosed, or intends to disclose, any purported confidential information or trade secrets of RPG to American Greetings or any other person or entity. (Id. ¶ 43.)

Finally, the concept of a "collection" of Kathy Davis greeting cards is not confidential or trade secret information of RPG. On the contrary, Kathy Davis greeting cards are already publicly marketed in part as a "collection" and have been for a number of years, such that Kathy Davis' name is prominently displayed on stand-alone and other public displays. (Declaration of Peter Walts ("Walts Decl.") ¶¶ 4-7, Group Exs. A, B and C attached hereto as **Exhibit 3**.) This is publicly available for everyone to see, and there is nothing confidential or secret about a Kathy Davis "collection" concept.

### III. ARGUMENT

#### A. The Standard for Issuance of Preliminary Injunctions

The issuance of a preliminary injunction is an extraordinary remedy to be used sparingly, and should not be issued unless the movant establishes certain requirements. See, e.g., Cooper v.

Salazar, 196 F.3d 809, 813 (7th Cir. 1999). As a threshold matter, the movant must show: (i) a likelihood of success on the merits; (ii) irreparable harm if the preliminary injunction is denied; and (iii) the inadequacy of any remedy at law. Id. Once this threshold showing is made, the court then balances (iv) the harm to the movant if the preliminary injunction were wrongfully denied against the harm to the respondent if the injunction were wrongfully granted; and (v) the impact on the public interest. Id. RPG has failed to establish any of these requirements.

### B. RPG Does Not Establish a Likelihood of Success on the Merits

#### 1. Trade Secret Misappropriation

To succeed on its claim for misappropriation under the Illinois Trade Secrets Act (765 ILCS 1065/1 et seq.) ("ITSA"), RPG must establish that the information in question was (i) secret; (ii) misappropriated; and (iii) used in the defendant's business. See, e.g., Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1965-66 (7th Cir. 1992).

##### a. RPG Has Not Identified any Trade Secrets

With respect to the first requirement, RPG must identify its trade secrets with particularity. Id. Nowhere does RPG identify its purported trade secrets with any particularity. At best, RPG contends broadly that "the existence of the customer commitment and the roll out plans" are trade secrets. (Plaintiff's Memorandum of Law in Support of Preliminary Injunction Motion ("Memo of Law") p. 3.) First, the existence of the Customer's commitment to sell the Signature Collection is not a trade secret of RPG. This information was not considered confidential and RPG never objected to or expressed any concern about the various measures KDI took to promote the Client test launch and the Signature Collection. Kathy Davis greeting cards also have been featured at Customer locations for years, and the presence of these cards at

the Customer, regardless of their arrangement on racks, is public knowledge.³ Pope v. Alberto-Culver Co., 296 Ill. App. 3d 512, 515-518, 694 N.E. 2d 615, 616-619 (1st Dist. 1998) (concluding that information generally available to public cannot constitute a trade secret).

Second, the Customer commitment and roll out plans do not rise to the level of a trade secret. Not all confidential information amounts to a trade secret, and RPG presents no evidence showing that it took any affirmative steps to maintain the secrecy of this information. RPG never indicated to KDI, through a confidentiality agreement or otherwise, that the Customer commitment and/or roll out plans were intended to be confidential. RPG did not even object to the disclosure of this information on the Internet through the Kathy Davis Blog or to KDI's mock up of the Signature Collection which it displayed in prominent view in its studio for any visitor to see. In this respect, this case is no different from Liebert Corp. v. Mazur, where the court denied a preliminary injunction for a trade secret claim concerning customer bids and sales quotations. 357 Ill. App. 3d 265, 279-280, 827 N.E. 2d 909, 924 (1st Dist. 2005). The court held that the plaintiff failed to establish a likelihood of success on the merits because "[t]he record contain[ed] no evidence showing Zonatherm's salespersons understood the sales and quotation information was confidential; [t]hey did not sign confidentiality agreements, the information was not labeled 'confidential,' and none of Zonatherm's managers testified that they advised salespersons that the information was confidential." Id. at 280. The same is true in this case. See also Applied Indus. Materials Corp. v. Brantjes, 891 F. Supp. 432, 437-38 (N.D. Ill.

---

³ RPG appears to argue that a "collection" concept of Kathy Davis greeting cards is confidential and an RPG trade secret. This argument fails for a number of reasons. First, KDI (Not RPG) developed the "collection" concept to promote the sale of Kathy Davis greeting cards. Second, RPG does not have a protectible interest in a "collection" of Kathy Davis greeting cards because the concept is widely known throughout the industry and by the public as a means to promote greeting cards sales. Finally, there are numerous collections of Kathy Davis greeting cards, as well as collections from other artists, already on public display in retail outlets that sell greeting cards. (See Walts Decl. ¶¶ 4-7, Group Exs. A, B and C.)

1994) (concluding that the plaintiff failed to establish likelihood of success on trade secret claim because price employer paid supplier and charged customer was not trade secret information).

RPG also contends that general information "concerning RPG's overall market research, strategies, personnel, sales goals, market studies, results, forecasts and pricing analysis" constitute trade secrets. "It is not enough to point to broad areas of ... information and assert that something there must have been secret ... [RPG] must show concrete secrets." Composite Marine Propellers, 962 F.2d at 66. As stated in AMP v. Fleischhacker, "generalized confidential business information," as alleged here, does not constitute protectable trade secrets. 823 F.2d 1199, 1204 (7th Cir. 1987); see also Nilssen v. Motorola, Inc., 963 F. Supp. 664, 672 (N.D. Ill. 1997) (ruling that the plaintiff could not state a claim for trade secret protection "by simply producing long lists of general areas of information which contain unidentified trade secrets").[4]

### b. RPG Has Not Shown that Davis Misappropriated or Used Any alleged Trade Secrets

With respect to the second and third requirements, RPG claims that "Davis already has disclosed or intends to disclose RPG's trade secrets to American Greetings, or she inevitably will do so." (Memo of Law pp. 4-7.) Davis has provided a sworn denial indicating that neither she nor KDI has used or disclosed any purported confidential information or trade secrets of RPG. Davis' sworn denial is unrebutted. Instead, RPG relies solely on the assertion that "Davis'

---

[4] RPG relies upon Learning Curve Toys, Inc. v. Playwood Toys, Inc. to support its trade secret claim. 342 F.3d 714 (7th Cir. 2003). In that case, the court upheld a jury's finding as to the existence of a trade secret in the design of a noise-producing toy train because, among other things, there was an oral confidentiality agreement between the toy designer and manufacturer and the concept for a noise-producing train was not generally known outside the designer's business. Id. at 723-726. In this case, by contrast, there is nothing secret about a "collection" concept to market greeting cards; the customer commitment and the roll out plans were not secret; and there is no evidence to support a written or oral confidentiality agreement between RPG and KDI. Moreover, unlike in Learning Curve Toys, KDI developed and created the Kathy Davis "Scatter Joy" brand; the Kathy Davis greeting cards that comprise the Signature Collection are owned exclusively by KDI; and, as demonstrated in the next section, KDI has not used and will not inevitable use any purported confidential information or trade secret of RPG.

actions and recent pronouncements make it *extremely likely* that she has ... disclosed or intends to disclose RPG's trade secrets to American Greetings." (Id. p. 5 (emphasis added).) This unsupported assertion does not create a likelihood of success on the merits. Applied Indus. Materials, 891 F. Supp. at 439 (finding that the plaintiff failed to establish misappropriation where it did not offer proof that the employee disclosed the alleged trade secret or threatened to do so and, therefore, no evidence to contradict the defendant employee's sworn denials).

Likewise, RPG has not submitted any evidence to support inevitable disclosure. In fact, RPG's reliance on the inevitable disclosure doctrine is premised on the incorrect "*information and belief*" allegation that "Davis and American Greetings intend to market the Signature Collection to [the Customer]." (Memo of Law pp. 6-7.) To the contrary, KDI's arrangement with American Greetings will not include any of the 60 Kathy Davis greeting cards that comprised the Signature Collection, and KDI already has informed RPG of this fact. Nor does KDI have any intention during this time to license, or otherwise market or sell, any of those greeting cards. Under these circumstances, the inevitable disclosure doctrine is not applicable and there is nothing to enjoin. In fact, courts have refused to apply this doctrine under facts more likely to involve inevitable disclosure. Magellan Int'l Corp. v. Salzgitter Handel, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (that the defendant intends to sell same products to plaintiff's customers does not establish he will inevitably use the plaintiff's trade secrets to do so); see also Abbott Labs. V. Chiron Corp., No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997).

    **2.**    **Breach of Fiduciary Duty**

RPG's claim for breach of fiduciary duty cannot succeed on the merits because Davis did not owe RPG a fiduciary duty. Any obligations owed to RPG were owed by KDI (not Davis) and were defined by and encompassed in the License Renewal. See, e.g., Autotech Tech. Lmt. P'ship v. Automationdirect.com, Inc., No. 05 C 5488, 2005 WL 3180147, at *7 (N.D. Ill. Nov.

23, 2005) (stating that "parties to a contract do not owe a fiduciary duty to one another" beyond the contract obligations). No other legal relationship or special circumstances exist as a matter of law or under the facts of this case to warrant imposition of a fiduciary duty.

      a.    **Davis and RPG Were Not Joint Ventures with respect to the Signature Collection**

The contractual relationship between RPG and KDI was that of licensor and licensee. The relationship did not "grow into a joint venture with respect to the Signature Collection." (Memo of law p. 8.) The License Renewal contains no terms memorializing a joint venture with respect to the Signature Collection, and the court in Autotech rejected this same argument under similar facts. In that case, the plaintiff sought a preliminary injunction on the basis that the defendant had breached a fiduciary duty. As in this case, the plaintiff there argued that the contract "was more than just a mere supply contract, but instead was an agreement [or "marriage"] that reflected 'a deeper sense of commitment to the long term success of all partners in the relationship.'" Id. at *2, 4. The court rejected this argument and held that the plaintiff "ha[d] not demonstrated a likelihood of success on the merits. Id.

In reaching this holding, the court determined that the plaintiff failed to establish a fiduciary duty under joint venture or partnership principles. Id. at *4-6. Notably, the court ruled that the contract did not provide an "essential element" necessary for either relationship – namely, the "ability of one party to create liabilities with third parties on behalf of the joint enterprise to which the other members of the joint venture are bound." Id. at *6. The same is true in this case. Nothing in the License Agreement or any subsequent renewal gave either party the right to create obligations or enter into agreements with third parties that would bind the other, and RPG provides no evidence that would otherwise do so. As in Autotech, this is fatal to RPG's fiduciary duty claim. See also O'Brien v. Cacciatore, 227 Ill. App. 3d 836, 845, 591 N.E.

2d 1384, 1390 (1st Dist. 1992) (holding that a joint venture requires that "all partners or joint ventures are liable jointly for all debts and obligations of the partnership or venture").

### b. No Other Special Circumstances Establish a Fiduciary Relationship

RPG also argues that, even if they were not parties to a joint venture, RPG and Davis had a special (i.e., confidential) relationship which gives rise to the same duties. (Memo of Law pp. 9-10.) The court in Autotech also rejected this argument. In addition to certain legal relationships not present here, a fiduciary relationship "might also arise as a result of the special circumstances of the parties' relationship where one party places trust in another *so that the latter gains superiority and influence over the former.*" Autotech, 2005 WL 3180147 at *6 (citing cases) (emphasis added). In this case, there is no evidence to support that Davis gained any superiority or influence over RPG. Therefore, as in Autotech, RPG cannot establish a likelihood of success on a claim for breach of fiduciary duty. See also American Hardware Mfg. Assoc. v. Reed Elsevier, Inc., No. 03 C 9421, 2004 WL 3363844, at *11-12 (N.D. Ill. Dec. 28, 2004) (dismissing fiduciary duty claim because the plaintiff did not allege any facts indicating that the defendant held a dominant position over the plaintiff to establish a special relationship).[5]

### 3. Breach of Contract

RPG asserts that it will succeed on its breach of contract claim because "Davis attempted to terminate [the License Renewal] in violation of the express termination provision … and

---

[5] None of the cases cited by RPG involve a breach of fiduciary duty claim and provide no support for a likelihood of success on the merits under the facts of this case. (Memo of Law pp. 9-10.) Rather, the courts in each case determined only that a party was obligated not to disclose information provided by another in confidence. For example, in Crocan Corp. v. Sheller-Globe Corp., the court held that a supplier misappropriated confidential information entrusted to it by the manufacturer when the supplier used that information to start a competing business. 385 F. Supp. 251, 253 (N.D. Ill. 1974). Likewise, the court in Jones v. Ulrich concluded that the defendant could not claim another's invention for his own use without paying a royalty. 342 Ill. App. 16, 24-25, 95 N.E. 2d 113, 117 (3d Dist. 1950). In this case, by contrast, KDI has not disclosed or used any information provided by RPG in confidence.

because Davis has [allegedly] admitted working with American Greetings …" (Memo of Law p. 11.) RPG does not explain either breach of contract theory. Nor can it. The License Renewal allows KDI to terminate the license *at its sole discretion* upon the second anniversary date of the Agreement which KDI properly did in the December 28, 2007 termination letter. Moreover, KDI has not worked with or licensed any Kathy Davis greeting cards to American Greetings during the term of the license.

Additionally, RPG failed to (i) maintain a Permanent Branded Collection of Kathy Davis greeting cards for the duration of the Licensing Renewal; and (ii) introduce, as guaranteed, at least 10 new Kathy Davis everyday greeting cards into the RPG everyday line per month. These material breaches of the License Renewal preclude RPG from recovering for breach of contract. Fireman's Fund Mortgage Corp. v. Zollicoffer, 719 F. Supp. 650, 657 (N.D. Ill. 1989) (holding that a party "who has materially breached a contract cannot recover under the contract").

### 4.      Misrepresentation/Promissory Estoppel

With respect to the claims for intentional or negligent misrepresentation and promissory estoppel, RPG again asserts without any support that it satisfied the requisite pleading elements. (Memo of Law p. 12.) Pleading a cause of action does not equate to demonstrating the necessary evidentiary basis to support a likelihood of success on the merits.

Furthermore, both of these claims are premised on the allegation that KDI represented and promised that it "intended to remain under contract with RPG." (Compl. ¶¶ 60, 74.) Both claims fail because KDI made no such promise and, in fact, expressly stated the contrary to RPG. KDI repeatedly expressed concerns orally and in writing regarding the parties' business relationship and the possibility of exercising its right to terminate the license. KDI even informed RPG that it had been approached by another greeting cards company. Thus, not only did KDI make no such representation or promise but, even if it had, RPG had no right as a matter

of law to reasonably rely upon any such representation or promise given the parties' late-2007 written communications expressly to the contrary. Thacker v. Menard, Inc., 105 F.3d 382, 385 (7th Cir. 1997) (concluding that the plaintiff could not rely upon on alleged oral representations which contradicted express terms of a writing).

      C.    **RPG Has an Adequate Remedy at Law and Cannot Establish Irreparable Harm.**

RPG contends that it does not have an adequate remedy at law and will suffer irreparable harm on the unsupportable basis that Davis intends to disclose RPG's confidential information and trade secrets to American Greetings. (Memo of Law pp. 13-14.) As previously demonstrated, Davis has not disclosed any confidential information or trade secrets of RPG and, although KDI exclusively owns the Kathy Davis greeting cards that comprised the Signature Collection, KDI's license agreement with American Greetings will not include those cards.

Furthermore, because the parties' business relationship is governed by the License Agreement and renewals, RPG's remedies, if any, are limited to contract damages. Therefore, preliminary injunctive relief is improper because RPG has an adequate remedy at law and cannot establish irreparable harm. See Classic Components Supply, Inc. v. Mitsubishi Elec. Am., Inc., 841 F.2d 163, 164-65 (7th Cir. 1988) (holding that injuries for breach of contract "yield damages" and "an injury compensable in money is not 'irreparable'"); see also Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1441 (7th Cir. 1986) (concluding that lost goodwill and confidential information can be adequately compensated with money damages). RPG concedes as much in its Complaint wherein it seeks money damages for each of its claims in an amount to be proved at trial. (Compl. ¶¶ 58, 65, 72, 78, 87.)

### D. A Balancing of Hardships Does Not Favor Entry of Preliminary Injunction and Would Harm the Public Interest.

Finally, the preliminary injunction RPG seeks attempts to avoid the termination provision in the License Renewal and impose noncompetition obligations noticeably absent from the License Renewal. In this respect, injunctive relief would improperly benefit RPG and significantly harm Davis and KDI. The parties specifically acknowledged in the License Agreement and subsequent renewals that KDI owns *all rights* to the Kathy Davis greeting cards. The parties also provided therein that KDI could terminate the license in its sole discretion and enter into a separate arrangement with another greeting card company such as American Greetings. The public is best served by allowing robust competition in the marketplace. However, in seeking injunctive relief, RPG is attempting to reconstruct the parties' license arrangement to prevent KDI from licensing its product to another greeting card company and, thereby, unfairly prevent a competitor from gaining ground in the greeting card industry. The balance of harms, accordingly, weighs against entry of a preliminary injunction.

## IV. CONCLUSION

RPG has not met its burden of proof to warrant the extraordinary remedy of preliminary injunctive relief. For each of the reasons discussed above, Davis requests the Court to deny RPG's Emergency Motion for Preliminary Injunction.

DATED: January 22, 2008

James V. Garvey
Frederic T. Knape
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: (312) 609-7500
F: (312) 609-5005

Respectfully submitted,

**KATHY DAVIS**

By: s/James V. Garvey
      One of Her Attorneys