**08 C 236**

**FILED**
**JANUARY 23, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**JUDGE BUCKLO**
**MAGISTRATE JUDGE DENLOW**

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RECYCLED PAPER GREETINGS, INC., an Illinois corporation,<br><br>        Plaintiff,<br><br>v.<br><br>KATHY DAVIS,<br><br>        Defendant. | No. 08 C 236<br><br>Judge Elaine B. Bucklo<br><br>Magistrate Judge Morton Denlow |

**DEFENDANT KATHY DAVIS' MEMORANDUM IN OPPOSITION TO
EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

As and for her Memorandum in Opposition to Plaintiff Recycled Paper Greetings, Inc.'s ("RPG") Emergency Motion for Preliminary Injunction ("Preliminary Injunction Motion"), Defendant Kathy Davis ("Davis") states as follows:

**I.   INTRODUCTION**

The Preliminary Injunction Motion seeks to enjoin Davis and her company, Kathy Davis Designs, Inc. ("KDI") (a non-party), from licensing greeting cards with KDI designs ("Kathy Davis greeting cards") to another greeting card company or using "Kathy Davis" and/or "Scatter Joy" branding to promote the sale of her greeting cards. The License Agreement, which RPG does *not* provide to the Court, precludes RPG from obtaining the injunctive relief sought. Notably, the License Agreement makes clear that KDI owns "all rights" in the Kathy Davis greeting cards provided under the license; contains a termination provision which KDI properly invoked to terminate the parties' relationship; and does not contain any provision that, in the event of termination, restricts KDI's right to license Kathy Davis greeting cards to another greeting card company or use the "Kathy Davis" and "Scatter Joy" brands, which KDI owns

exclusively, to market or sell those cards (including as a "collection" or otherwise). Separate and apart from the License Agreement, RPG has no likelihood of establishing that the parties were engaged in any joint venture relationship; even if they were, RPG has not shown (and cannot show) that KDI breached any alleged resulting duty with respect to confidentiality or otherwise.

Furthermore, KDI has no intention during the "Sell Off Period" (as defined in the License Agreement) to license, or otherwise market or sell, any of the 60 Kathy Davis greeting cards that comprised what RPG refers to as the "Signature Collection," to or through American Greetings Corporation ("American Greetings") or any other entity. Finally, Davis has not disclosed, and will not disclose, any purported confidential information or trade secrets of RPG, and there are no facts to conclude she inevitably will do so. KDI has advised RPG of these facts, yet RPG persists in its baseless request for "emergency" injunctive relief.

In sum, there is no basis for RPG to seek or obtain injunctive relief under these circumstances. RPG cannot demonstrate a likelihood of success on the merits or satisfy the other requirements necessary to enjoin KDI from licensing its designs or products to another greeting card company or using "Kathy Davis" and "Scatter Joy" branding to promote the sale of Kathy Davis greeting cards. Nor can RPG show a protectible interest in the *concept* of a "collection" of Kathy Davis greeting cards, which is not confidential or trade secret information of RPG. Accordingly, RPG's Preliminary Injunction Motion should be denied.

## II.     FACTUAL BACKGROUND

### A.     The Parties' Business Relationship is Governed by a License Agreement

Davis is CEO/Chief Visionary Officer of KDI. (Declaration of Kathy Davis ("Davis Decl.") ¶ 3, filed separately under seal as **Exhibit 1** per the Court's directive in open court on January 17, 2008.) KDI is in the business of designing and creating images and artwork for

greeting cards and other social expression products. (Id.) KDI conducts business primarily by licensing its images and artwork to third parties. (Id.) RPG is one such party. (Id.)

On or around November 20, 1990, KDI issued a license to RPG to sell Kathy Davis greeting cards and other related stationary products being produced by RPG at that time. (Id. ¶ 4.) This business relationship is governed by a License Agreement, which has been renewed from time to time. (Id. Group Ex. A.) Most recently, on or around March 22, 2006, the parties negotiated a license renewal to the License Agreement ("License Renewal"). (Id. ¶ 5, Ex. B.) The License Renewal provided a license for RPG to sell Kathy Davis greeting cards for which RPG agreed to pay KDI (i) a royalty percentage of the wholesale selling price on greeting cards using KDI designs, and (ii) an annual advance to KDI equal to a percentage of the previous year's royalties. (Id. Ex. B.)

The License Renewal required RPG to maintain a Permanent Branded Collection of Kathy Davis greeting cards for the duration of the Licensing Agreement. (Id.) KDI required that RPG initiate this line upon the signing of the License Renewal, and continue to build on that collection based on a minimum number of cards under the Permanent Branded Collection to be introduced each year of the Agreement. (Id. ¶ 6.) The License Renewal also required RPG to guarantee that at least 10 new Kathy Davis everyday greeting cards be introduced into the RPG everyday line per month as firm release. (Id. Ex. B.)

The License Renewal provided for KDI to be involved in marketing and promoting the sale of Kathy Davis greeting cards. (Id.) The License Renewal also allowed KDI the right to be involved in the design, development and presentation of new Kathy Davis greeting cards and introductions of those cards to RPG key accounts. (Id.)

The License Renewal commenced retroactively as of January 1, 2006 and was to continue for a period of seven (7) years. (Id.) The License Renewal specifically allowed KDI to terminate the license at its sole discretion, as follows:

> KDI shall have the right to terminate this agreement, upon the first and second anniversary dates [i.e., January 1, 2007 or January 1, 2008] of the agreement (hereinafter called "Phase I"). *Right to terminate shall be at the sole discretion of KDI, based on an assessment of the working relationship between KDI and RPG, and the impact of any changes in the management or policies of RPG.*

(Id.) (emphasis added.) In the event KDI exercised this right of termination, RPG would be entitled to one (1) year to sell off existing KDI inventory for Everyday Cards and two (2) years for Seasonal Cards (the "Sell Off Period"). (Id.) During the Sell Off Period, RPG would not be entitled to produce any inventory that would result in the extension of the Sell Off Period, and KDI would continue to receive the full royalty on all Kathy Davis greeting cards sold throughout the Sell Off Period. (Id.) The License Renewal, however, does not preclude KDI from separately licensing any Kathy Davis greeting cards in RPG's existing inventory for which RPG has a right to sell during the Sell Off Period. (Id.)

All other terms and provisions that had been in place between the parties under the License Agreement not superceded by the License Renewal remained in force.[1] (Id.) This included the provision in the original November 20, 1990 License Agreement and October 17, 1995 license renewal making clear that KDI "*shall continue to own all rights for the designs [RPG] choose[s] to publish.*" (Id. Group Ex. A (emphasis added).) Neither the License

---

[1] The October 17, 1995 license renewal added the following termination provision:

> In the event that Phil and/or I are no longer the principal decision makers at RPG, or if there is a significant change in the business philosophy or marketing strategies of RPG, then [KDI] has the right to terminate this agreement, provided that RPG shall have the right to sell remaining inventory as long as a full royalty is paid you.

(Davis Decl. Group Ex. A.)

Agreement nor any renewal contains any restrictions against competition, customer solicitation or the use of confidential information or trade secrets. (Id.) Nor are there any restrictions against the use of "Kathy Davis" and/or "Scatter Joy" branding. (Id.)

### B. KDI Developed the "Scatter Joy" Brand and Signature Collection

In connection with developing a new brand strategy and slogan to help personify the "Kathy Davis" brand, in or about May 2005 (and prior to signing the License Renewal), KDI created the Kathy Davis "Scatter Joy" brand. (Id. ¶ 13.) KDI retained an outside consultant to assist in the development of this brand. (Id.) RPG had no involvement or input into KDI's creation of this brand. (Id.) The Kathy Davis "Scatter Joy" brand is a KDI trademark and has been used on Kathy Davis greeting cards since August 2007 and on Kathy Davis public relations material, press kits and collateral items since January 2007. (Id.)

In or about January 2007, KDI addressed with RPG's new management team KDI's concern that the Permanent Branded Collection (consisting of 144 greeting cards as set forth in the License Renewal) still had not been implemented by RPG. (Id. ¶ 14.) In the following months, the parties had additional discussions on this topic. (Id.) In late Summer 2007, KDI discussed with RPG the idea of using the Permanent Branded Collection platform to present a concept to a specific customer ("Customer") for a collection of Kathy Davis greeting cards. (Id. ¶ 15.) RPG refers to this collection as the "Signature Collection" or "Collection." (Verified Complaint for Injunctive and Other Relief ("Complaint" or "Compl.") ¶¶ 14-21.) KDI developed a proposed four foot collection concept (consisting of 108 Kathy Davis greeting cards), created the signage and merchandising, and determined a mix of possible top-selling Kathy Davis greeting cards to comprise the Collection. (Davis Decl. ¶ 15.)

On or about July 30, 2007, at a meeting in Chicago at RPG's corporate headquarters, KDI presented the Signature Collection to both the Customer and RPG. (Id. ¶ 16.) RPG informed

KDI at a subsequent meeting on August 9, 2007 that the number of linear feet the Customer would make available for the Collection had been significantly reduced such that the Signature Collection would consist of only 48 Kathy Davis greeting cards (with an additional 12 cards to be used as "substitutions" for future use in the Collection). (Id.) RPG also informed KDI on October 4, 2007 that the Signature Collection would only be *tested* in less than 20% of the Customer's stores. (Id.)

Subsequently, KDI selected the specific Kathy Davis greeting cards to comprise the Signature Collection and created the visual layout for the Collection. (Id. ¶ 17.) Fifty-four (54) of the 60 Kathy Davis greeting cards ultimately comprising the Signature Collection were already available and active prior to the creation of this particular Collection. (Id.) RPG's involvement consisted of reviewing historical sales data and productivity figures to provide feedback to KDI's selections and make suggestions for certain replacement cards for those previously selected by KDI. (Id.) As of late December 2007, RPG had no firm arrangements in place to roll out the Signature Collection beyond the limited Customer test launch. (Id. ¶ 19.)

KDI did not receive and was not made privy to any proprietary or confidential information of RPG in connection with marketing efforts directed at the Customer. (Id. ¶ 18.) The fact that the Signature Collection was going to be marketed to the Customer was not confidential and RPG never indicated—through a confidentiality agreement or otherwise—that such information should be treated confidentially.[2] (Id. ¶ 21.) As early as September 2007, KDI disclosed the launch of the Signature Collection on the Internet through the Kathy Davis Blog to

---

[2] Kathy Davis greeting cards have been successfully sold by the Company for years, and the Signature Collection was not an "introduction" of KDI to the Customer or the public. (Davis Decl. ¶ 20.) The Signature Collection represented merely a realignment of a limited number of Kathy Davis greeting cards, most of which the customer already had been selling prior to the launch of the Signature Collection in the same fixture locations as other RPG cards are currently located. (Id.)

promote a successful product test launch. (Id. ¶ 22, Ex. C.) KDI also had in its studio a permanent card display that featured mock ups of the entire Signature Collection on open display for visitors (including RPG representatives) to view. (Id. ¶ 23) KDI informed RPG of its various efforts to promote the test launch and Collection. (Id. ¶¶ 22-23.) RPG never objected to or expressed concern about any of KDI's promotional measures, and never indicated to KDI that it intended to keep the test launch or Signature Collection confidential. (Id.)

KDI itself undertook to promote the Signature Collection, in part, due to RPG's lack of participation to market the Collection. (Id. ¶ 24.) It was not until late November/early December 2007 that RPG, in response to requests by KDI, described any potential marketing efforts it would consider undertaking to promote the Signature Collection. (Id.) Prior to that time, RPG's art department had informed KDI that RPG does not promote its artists' work. (Id.)

Neither the License Agreement nor any subsequent renewal gave RPG any proprietary rights in the Kathy Davis "Scatter Joy" brand, the Signature Collection of Kathy Davis greeting cards or any other Kathy Davis greeting cards. (Id. Group Ex. A.) As the License Agreement and subsequent renewals make clear, all of this art and branding is owned by KDI. (Id.)

### C.  KDI Expresses Concerns Over Its Business Relationship with RPG

Beginning as early as November 2005, KDI had expressed concerns to RPG with respect to, among other things, declining royalties, the parties' prior working relationship and RPG's potential sale and new management direction, and the need for exposure of the Kathy Davis brand via a branded collection. (Id. ¶ 26.) These concerns led to the inclusion of KDI's termination right under the License Renewal and resulted in a series of meetings and proposals between the parties regarding continuation of the parties' business relationship. (Id. ¶ 27.)

On November 8, 2007, the parties had a face-to-face meeting to address KDI's continuing concerns in light of the approaching contract right for KDI to terminate the parties'

relationship on January 1, 2008. (Id. ¶ 28.) Thereafter, RPG prepared a proposed "mutual agreement" on or around November 30, 2007 as a roadmap to attempt to preserve the parties' business relationship. (Id. Ex. D.) This proposal addressed items such as royalty growth, creative direction and operational/communication improvements. (Id.)

KDI formally responded to RPG's proposal on December 14, 2007. (Id. ¶ 29, Ex. E.) In its response, KDI raised "several major issues that remain[ed] unaddressed" and "request[ed] additional information that was critical for KDI to consider a continuation of the current Agreement ..." (Id.) Among other things, KDI concurred with RPG's assessment that KDI royalties had significantly declined in the past several years and that its opportunity for potential revenue growth was greatly inhibited because RPG had not launched the Permanent Branded Collection as it agreed to do in the License Renewal. (Id.) KDI also inquired about such things as remittance of compensation for the shortfall in revenue and RPG's breach of contract for not launching the Permanent Branded Collection; RPG's proposal to improve the annual advance percentage and financial guarantees; and RPG's commitment to improving its marketing capabilities (including a detailed plan for featuring the Signature Collection beyond the Customer test launch and implementing other quality improvement initiatives). (Id.) KDI also emphasized its reservations going forward when it specifically stated:

> As described above, these issues remain unclear from their description in your last document and require further clarification before KDI can consider a continuation of the current Agreement.
>
> As Kathy alluded to in her conversations with Mary, Jude and Mike, KDI has been approached by potential partners to market the KDI greeting cards and licensed product categories in the future, and we are actively considering these options. In order to effectively weigh these opportunities along with the current business relationship with RPG, it is imperative that we have more clarity from RPG in these critical areas.

(Id.)

At no time did KDI promise or otherwise suggest to RPG that KDI definitively intended to continue the parties' relationship. (Id. ¶ 31.) Indeed, the parties' late 2007 communications indicated just the opposite. (Id. Exs. D and E.) This included discussions in or about October 2007 between Davis and RPG's Chairman (Mary George), and a subsequent conversation with RPG's CEP (Jude Rake), where Davis expressly told Ms. George and Mr. Rake that KDI had been approached by another greeting card company. (Id. ¶ 31.) In a subsequent conversation with Ms. George at the time of the November 8, 2007 meeting in Chicago, Davis expressed to Ms. George that it was KDI's desire to try to work things out with RPG, which was, in fact, the purpose of that meeting. (Id.) At that meeting, KDI made clear to RPG what would be necessary in terms of compensation and clarity in business terms from RPG in order to continue the relationship. (Id.)

Although KDI requested that RPG address the outstanding issues before December 20, 2007, RPG did not respond until December 27, 2007. (Id. ¶ 32, Ex. F.) In that correspondence, RPG acknowledged that it "was not successful in delivering the 'Scatter Joy' showcase as quickly as [it] had hoped" and failed to adequately address the critical issues previously raised by KDI. (Id.) Accordingly, on December 28, 2007, KDI notified RPG in writing that it elected to exercise its right to terminate based on its assessment of the working relationship between the parties, impact of changes in the management and policies of RPG, and changes in RPG's business philosophy and marketing strategies. (Id. ¶ 33, Ex. G.) Nowhere in that letter, or Davis' follow-up letter on January 4, 2008 did KDI state that it had any intention to shop the Signature Collection to another company. (Id. ¶¶ 33-37, Exs. G and H.)

D.   **KDI Has Negotiated a License Agreement with American Greetings**

KDI has negotiated a license agreement with American Greetings to sell Kathy Davis greeting cards and related social expression products. (Id. ¶ 38.) This license agreement will not

-9-

include, for the calendar year 2008, any of the 60 cards that comprised the Signature Collection. (Id.) American Greetings is a New York Stock Exchange-traded company that is over 100 years old. American Greetings' annual gross sales are approximately $1.7 billion. (Declaration of Jeffrey Weiss ("Weiss Decl.") ¶ 4, filed separately under seal as **Exhibit 2**.) American Greetings currently distributes products (e.g., greeting cards, wrapping paper, etc.) through mass retail chains, drug stores, and other retail outlets. (Id.) American Greetings retail distribution of greeting cards exceeds that of RPG. (Id. ¶ 5.) American Greetings has an extremely robust research and development group and function, and independently conducts and sets its own product development, marketing and other strategic initiatives, sales goals, projections, market studies and pricing analyses, including in relation to its many customers with whom it has been doing business for many years. (Id.)

On or about December 11, 2007, representatives of American Greetings and KDI met to discuss a potential future business relationship between them. (Davis Decl. ¶ 39; Weiss Decl. ¶ 6.) During that meeting, KDI presented summary information concerning KDI's productivity over the years. (Davis Decl. ¶ 39, Ex. I; Weiss Decl. ¶ 7, Ex. A.) KDI also briefly presented over 100 small boards of KDI artwork. (Davis Decl. ¶ 39.) One of these small boards included a rendering of the Signature Collection prepared by KDI which, as RPG had witnessed during its October 15, 2007 visit, was openly displayed in KDI's studio for any visitor to view without any objection by RPG. (Id.) This information was KDI's business and proprietary information and KDI did not consider any of it to be confidential. (Id.)

In addition, KDI stated to American Greetings that a collection of Kathy Davis greeting cards was being tested for the Company in early Spring 2008, which information, as noted above, had been posted on the Internet through the Kathy Davis Blog in September 2007 and