IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECYCLED PAPER GREETINGS, INC.,
an Illinois corporation,

                    Plaintiff,                           No. 08 C 236

v.                                                       Judge Elaine B. Bucklo

KATHY DAVIS,                                             Magistrate Judge Morton Denlow

                    Defendant.

**DEFENDANT KATHY DAVIS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

## I.    INTRODUCTION

The Verified Complaint for Injunctive and Other Relief ("Complaint") seeks to broadly

enjoin Defendant, Kathy Davis ("Davis"), from licensing her images and artwork on greeting

cards to another greeting card company or otherwise using her name to promote the sale of her

greeting cards.  While Plaintiff, Recycled Paper Greetings, Inc. ("RPG"), seeks extraordinary

injunctive and other relief, the claims in the Complaint are legally deficient and unsupportable.[1]

As demonstrated herein, each claim fails to state a cause of action upon which injunctive

or any other relief may be granted and should be dismissed for, at least, the following reasons:

- The breach of contract claim fails because Davis' December 28, 2007 letter
  unequivocally terminated the parties' relationship as provided for in the March

---

[1] The Court should consider and decide this motion to dismiss prior to deciding RPG's motion for a temporary restraining order and/or preliminary injunction and before conducting any preliminary injunction hearing.  See Washington v. Wyman, 54 F.R.D. 266, 272 (S.D.N.Y. 1971) (stating that "[t]he court must first decide defendants' motions to dismiss the complaint before reaching the motion for preliminary injunction"); see also Omega Homes, Inc. v. City of Buffalo, 4 F. Supp. 2d 187, 189 (W.D.N.Y. 1998) (denying plaintiff's motion for preliminary injunction as moot, after court first considered and granted defendant's Rule 12(b)(6) motion to dismiss).

22, 2006 license renewal; further, any implied covenant of good faith and fair dealing is not a source of contractual duties or liability and does not support an independent cause of action for breach of contract;

- RPG cannot plead reliance to support either an intentional or negligent misrepresentation claim because, as a matter of law, RPG could not justifiably rely upon a non-binding alleged oral statement of future intention in the face of an express contract provision that gave Davis the unconditional and unqualified right to terminate the relationship;

- Davis did not owe RPG any fiduciary duty as the parties' relationship was controlled exclusively by the license agreement and subsequent renewals, and RPG cannot plead around this by attempting to recast the written contract as a joint venture or special relationship giving rise to a fiduciary relationship;

- A statement of future intention is not a unambiguous promise to support a promissory estoppel claim and, as with the misrepresentation claim, RPG cannot plead reasonable reliance because the March 22, 2006 license renewal granted Davis a clear and absolute right to terminate the relationship;

- The trade secret misappropriation claim is insufficient as a matter of law because (i) generalized business information, even if confidential, does not constitute a protectable trade secret; (ii) RPG does not sufficiently allege any measures to protect the purported trade secret information; and (iii) RPG does not plead threatened use or inevitable disclosure of any purported trade secret; and

- RPG cannot state an independent claim for preliminary and permanent injunction because injunctive relief is a remedy and not a cause of action.

## II.    FACTUAL BACKGROUND[2]

On or around November 20, 1990, Davis issued a license to RPG to sell her greeting cards and other related stationery products being produced by RPG at that time.  (Compl. ¶ 10, 12.)  This business relationship was governed by a license agreement, which has been renewed from time to time.  (Id. ¶¶ 22-23.)  (True and correct copies of the license agreement and subsequent renewals, referred to by RPG in its Complaint, are attached hereto as **Group Exhibit 1**.)

---

[2] The well-pleaded allegations of the Complaint are taken as true solely for purposes of the Motion to Dismiss as required under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").

Most recently, on or around March 22, 2006, the parties negotiated a license renewal to the License Agreement. (Compl. ¶ 23.) (A true and correct copy of the March 22, 2006 license renewal, referred to by RPG in the Complaint, is attached hereto as **Exhibit 2**.) This license renewal commenced retroactively as of January 1, 2006 and was to continue for a period of seven (7) years. (Id.) This license renewal represented a fundamental change in the parties' relationship. (Compl. ¶ 27.) Among other things, it provided for Davis to be involved in marketing and promoting the sale of Kathy Davis greeting cards and to be involved in the design, development and presentation of new Kathy Davis greeting cards and introductions of those cards to RPG key accounts. (Id. ¶¶ 27-29; Exhibit 2.) Davis took advantage of the "Key Account Relationships" provision through her active involvement in creating and developing the Signature Collection of Kathy Davis greeting cards for the Customer. (Id. ¶ 30.)

The March 22, 2006 license renewal also specifically allowed Davis to terminate the license at her sole discretion, as follows:

> [Davis] shall have the right to terminate this agreement, upon the first and second anniversary dates [i.e., January 1, 2007 and January 1, 2008] of the agreement … [r]ight to terminate shall be at the sole discretion of [Davis], based on an assessment of the working relationship between [Davis] and RPG, and the impact of any changes in the management or policies of RPG.

(Exhibit B.) All other terms and provisions that had been in place between the parties under the license agreement not superceded by the March 22, 2006 renewal remained in force. (Id.) This included the provision in the original November 20, 1990 License Agreement and October 17, 1995 license renewal making clear that Davis owned all rights in Kathy Davis greeting cards provided to RPG under the license. (Group Exhibit A.) Neither the original License Agreement nor any subsequent renewal contains any restrictions against competition, customer solicitation or the use of alleged RPG trade secrets or confidential information. (Id.)

Beginning in November 2007, Davis and RPG began discussing their continuing relationship in light of Davis' contract right to terminate the relationship effective January 1, 2008. (Compl. ¶ 35.) At that time, Davis spoke with the person at RPG most responsible for her relationship and, according to the Complaint, indicated that she "intended to remain under contract with RPG." (Id. ¶¶ 37-38, 60.) Subsequently, on December 28, 2007, Davis sent a letter to RPG terminating the relationship pursuant to her option to terminate under March 22, 2006 license renewal. (Id. ¶¶ 43-44.) (A true and correct copy of the December 28, 2007 termination letter, referred to by RPG in the Complaint, is attached hereto as **Exhibit 3**.)[3]

## III.    LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. FED. R. CIV. P. 12(b)(6). In doing so, the court should accept as true all well-pleaded factual allegations and any reasonable inferences apparent on the face of the complaint. See, e.g., Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 521 (7th Cir.2001). This does not mean that the court is required to accept conclusions of law or conclusions of fact not supported by allegations of specific facts. Id.; McLeod v. Arrow Marine Transport, Inc., 258 F.3d 608, 614 (7th Cir. 2001) (stating that a court "is not obliged to accept as true conclusory statements of law or unsupported conclusions of fact"). Ultimately, dismissal is appropriate if the plaintiff puts forth no set of facts that would entitle him to relief. Griffin v. Sutton Ford, Inc., 452 F. Supp. 2d 842, 845 (N.D. Ill. 2006).

---

[3] The Court may consider the license agreement and subsequent renewals, as well as the December 28, 2007 termination letter, because all of these documents are specifically referred to and relied upon by RPG in the Complaint. See, e.g., Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (denying motion to exclude documents attached to motion to dismiss because the documents "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim") (citing cases).

## IV.    ARGUMENT

### A.    RPG Does Not and Cannot Allege Any Breach of Contract by Davis

The breach of contract claim is insufficient and should be dismissed.  RPG alleges that "Davis was a party to a written contract with RPG" and, "[f]or the reasons detailed herein … breached her contractual obligations to RPG."  (Compl. ¶¶ 54-55.)  RPG does not attach the written contract to the Complaint and, more importantly, nowhere "details" in the Complaint any breach by Davis or even identifies the specific contract term(s) allegedly breached by Davis.

Construing all reasonable inferences in favor of RPG, the only possible breach implied anywhere in the Complaint is Paragraph 43 where RPG alleges:

> Nevertheless, by letter dated December 28, 2007 – *not the established termination date of January 1, 2008* – and in direct contravention of her stated intention, Davis *purported* to terminate her relationship with RPG.

(Compl. ¶ 43.)  RPG appears to allege that Davis breached the termination provision in the March 22, 2006 license renewal because, according to RPG, her termination was ineffective.  (Id. ¶¶ 43-44.)  The termination provision provides in relevant part that Davis "shall have the right to terminate this agreement upon the first and second anniversary dates of the agreement."  (Exhibit 2.)  In the December 28, 2007 letter, Davis terminated the relationship in unequivocal terms:

> I am choosing by this letter to exercise my option to terminate the current contract with RPG as provided in the Term and Termination provision of our agreement dated March 22, 2006."

(Exhibit 3.)  The termination letter is not rendered ineffective because it was dated December 28, 2007.  Rather, under the termination provision and by operation of law, the termination became effective on Monday, January 1, 2008.

RPG also alleges that "Davis breached the covenants of good faith and fair dealing by taking the actions described herein."  (Compl. ¶ 57.)  However, the implied covenant of good

faith and fair dealing does not support an indepedent cause of action for breach of contract.  It is merely "an aid to interpretation" and "not a source of contractual duties or liability."  <u>Zeidler v. A & W Restaurants, Inc.</u>, 301 F.3d 572, 575 (7th Cir. 2002); <u>see</u> <u>also</u> <u>Trading Tech., Inc. v. Refco Group Ltd., LLC</u>, No. 05 C 1079, 2006 WL 794766, at *2-3 (N.D. Ill. Mar. 23, 2006) (dismissing breach of contract counterclaim and recognizing that "[n]o recent Illinois or Seventh Circuit case has allowed a breach of contract claim to rely solely on the covenant of good faith and fair dealing," even where the defendant alleged that the plaintiff "had a bad faith motive for ending its relationship with [the plaintiff]").

**B.    RPG Cannot Plead Justifiable Reliance to Support a Misrepresentation Claim**

The basis for RPG's misrepresentation claim is that "Davis represented to RPG in early December 2007 that she *intended* to remain under contract with RPG" and that RPG reasonably relied on that statement.  (Compl. ¶¶ 60, 63 (emphasis added).)  These allegations cannot support a misrepresentation claim as a matter of law.   To plead an intentional or negligent misrepresentation claim, RPG must allege, among other things, that Davis made a false statement of material fact and that RPG justifiably relied on the truth of the statement.  <u>See</u>, <u>e.g.</u>, <u>Quinn v. McGraw-Hill Co., Inc.</u>, 168 F.3d 331, 335 (7th Cir. 1999).  Here, even assuming that Davis indicated in late November or early December 2007 that she intended to continue a business relationship, RPG cannot reasonably rely upon that statement because the March 22, 2006 license renewal gave her the unconditional and unqualified right to terminate the agreement up to and including January 1, 2008.

The court in <u>Runnemede Owners, Inc. v. Crest Mortgage Corp.</u> dismissed a fraudulent misrepresentation claim under similar circumstances.  861 F.2d 1053, 1058-59 (7th Cir. 1988).  In that case, the plaintiff claimed that it reasonably relied on a mortgage company's oral

statement that the parties "had a deal."  The court disagreed because the parties' letter of

commitment "only bound [the mortgage company] to *consider* extending a loan to [the plaintiff]

under certain specified conditions."  Id. at 1059.  The court stated:

> Contracts would be become no more than presumptive statements of the
> parties' intentions, instead of legally enforceable agreements.  And the
> give-and-take of negotiations would become meaningless if, after making
> concessions in order to obtain other contractual protections, a
> knowledgeable party is later able to reclaim what it had given away by
> alleging that it had, in fact, relied not on the writing but on the prior oral
> statements.

Id.  On this basis, the court concluded that experienced businessmen should proceed "with

caution when confronted with oral representations inconsistent with the written terms of [a]

contract" and held that the plaintiff could not establish reasonable reliance as a matter of law

when the contract directly contradicted the alleged oral misrepresentations.  Id.

The same result is called for here.  RPG alleges that it was aware of Davis' right to

terminate the relationship (Compl. ¶¶ 34-35) but does not, and cannot, allege that Davis made

any unequivocal statement of fact that she would not exercise her right to terminate.  Barring any

such statement, the misrepresentation claim should be dismissed because it is nothing more than

an improper attempt to prevent Davis from exercising her contract right based on a non-binding

statement of her future intention.  See also Frahm v. Equitable Life Assurance Society, 137 F.3d

955, 961 (7th Cir. 998) (holding that plaintiffs could not satisfy reliance element when health

plan summaries explicitly reserved for defendant the right to change the plan).

### C.    Davis Did Not Owe RPG Any Fiduciary Duty Beyond the Obligations Encompassed in the Contract

RPG alleges that "[its] relationship with Davis is governed by contract" (Compl. ¶ 12)

and, therefore, cannot plead the existence of a fiduciary duty because "parties to a contract do not

owe a fiduciary duty to one another."  Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.,

No. 05 C 5488, 2005 WL 3180147, at *7 (N.D. Ill. Nov. 23, 2005); <u>Oil Express Nat'l, Inc. v. Burgstone</u>, 958 F. Supp. 366, 370 (N.D. Ill. 1997) (stating that it is well established that "parties to a contract … do not owe a fiduciary duty to one another").

RPG attempts to get around this rule by alleging that the parties' contractual relationship grew into a joint venture with respect to the Signature Collection. (Compl. ¶ 67.) At the same time, however, RPG specifically alleges in detail that this change was reflected in the terms of the March 22, 2006 license renewal. (<u>Id</u>. ¶¶ 27-33.) Therefore, even accepting RPG's allegations as true, there is no fiduciary relationship between the parties separate and apart from the contractual relationship. <u>Prescott v. Allstate Life Ins. Co.</u>, 341 F. Supp. 2d 1023, 1028 (N.D.Ill.2004) (dismissing fiduciary duty claim where a contract defined the parties' respective duties and obligations).

In addition, RPG does not plead, as it must, that it had the ability to create liabilities with third parties that would bind Davis as a joint venturer. This is an "essential element of both joint ventures and partnerships" and, for this very reason, the court in <u>Autotech</u> determined that the plaintiff failed to establish the existence of a fiduciary duty through a joint venture relationship. 2005 WL 3180147, at *4-6; <u>see also</u> <u>O'Brien v. Cacciatore</u>, 227 Ill. App. 3d 836, 845, 591 N.E. 2d 1384, 1390 (1st Dist. 1992) (holding that a joint venture requires that "all partners or joint ventures are liable jointly for all debts and obligations of the partnership or venture").

RPG also attempts to impose a fiduciary duty by alleging a special (<u>i.e.</u>, confidential) relationship which gives rise to the same duties. (Compl. ¶ 67.) However, RPG does not allege, nor can RPG allege, that Davis "gained superiority and influence" over it. <u>Autotech</u>, 2005 WL 3180147 at *6 (citing cases). In the absence of any such allegations, RPG cannot establish the existence of a fiduciary duty through any special relationship and the claim should be dismissed.

American Hardware Mfg. Assoc. v. Reed Elsevier, Inc., No. 03 C 9421, 2004 WL 3363844, at

*11-12 (N.D. Ill. Dec. 28, 2004) (dismissing fiduciary duty claim because the plaintiff did not

allege any facts indicating that the defendant held a dominant position over the plaintiff to

establish a special relationship); Oil Express, 958 F. Supp. at 370-71 (dismissing fiduciary duty

counterclaim because the defendants "have alleged no facts from which a fiduciary relationship

may be inferred").

**D.    RPG Does Not Allege an Unambiguous Promise and Cannot Plead Reasonable Reliance to Support a Promissory Estoppel Claim**

In order to plead a claim for promissory estoppel, RPG must allege, among other things,

an unambiguous promise and detrimental reliance. See, e.g., Guaranty Residential Lending, Inc.

v. International Mortgage Ctr., Inc., 305 F. Supp. 2d 846, 866 (N.D. Ill. 2004). RPG alleges that

Davis made promises that she "*intended* to remain under contract with RPG" and "would provide

and deliver designs and artwork for the Signature Collection." (Compl. ¶ 74 (emphasis added).)

RPG further alleges that it "relied on Davis' promises" to its detriment. (Id. ¶ 75.) RPG's

promissory estoppel claim is insufficient and should be dismissed.

First, in order to state a promissory estoppel claim, the unambiguous promises must be

definite and not, as in this case, statements of future intention. Garwood Packaging, Inc. v. Allen

& Co., Inc., 378 F.3d 698, 702 (7th Cir. 2004) (emphasizing that "the promise relied on to trigger

an estoppel must be definite in the sense of being clearly a promise *and not just a statement of

intentions*") (emphasis added); Hayes & Griffith, Inc. v. GE Capital Corp., No. 88 C 10179, 1989

WL 135246, at *7 (N.D. Ill. 1989) (dismissing promissory estoppel claim because the statement

that the defendant "could provide all of the financing needs of [the plaintiff] with the short time

frame demanded *was merely a statement of intention*, and not a promise that can be enforced")

(emphasis added).

Second, like the misrepresentation claim, RPG cannot plead that it reasonably relied upon the alleged promises because the termination provision in the March 22, 2006 license renewal granted Davis a clear and absolute right to terminate the relationship. For this very reason, the court in Hayes dismissed a promissory estoppel claim because the reliance on the alleged promise was not reasonable as a matter of law where the promise was inconsistent with the terms of the parties' contract. 1989 WL 135246, at *7 (citing Runnemede, 861 F.2d at 1059); see also Thacker v. Menard, Inc., 105 F.3d 382, 385 (7th Cir. 1997) (concluding that the plaintiff could not reasonably rely upon on alleged oral representations which contradicted express terms of a writing).

### E.    The Trade Secret Misappropriation Claim Is Insufficient as a Matter of Law

RPG seeks to impose liability under the Illinois Trade Secret Act (765 ILCS 1065/1 et seq.) ("ITSA") on the alleged basis that its "confidential information, including but not limited to business plans, market research, market studies, pricing plans, personnel strategies and consumer strategies ... are entitled to [trade secret protection]." (Compl. ¶¶ 80-81.) The ITSA provides in relevant part:

> (d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> \*       \*       \*
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). Accordingly, RPG must identify specific trade secrets and allege, among other things, that it took reasonable measures to maintain the "secrecy" of the alleged trade secrets. Id.; see also Magellan Int'l Corp. v. Salzgitter Handel GmbH, 76 F. Supp. 2d 919, 926-27 (N.D. Ill. 1999).

With respect to the first requirement, "[i]t is not enough to point to broad areas of ... information and assert that something there must have been secret ... [t]he plaintiff must show concrete secrets." Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1966 (7th Cir. 1992). As the court in Nilssen v. Motorola, Inc. stated:

> Hence Nilssen cannot state a claim for trade secret protection under the ITSA by simply producing long lists of general areas of information which contain unidentifiable trade secrets. Instead, *he must articulate protectable trade secrets with specificity or suffer dismissal of his claim.*

963 F. Supp. 664, 672 (N.D. Ill. 1997) (emphasis added). In this case, however, RPG has alleged nothing more than a list of general areas of business information which is not enough, let alone sufficiently specific or concrete, to constitute protectable trade secrets. AMP v. Fleischhacker, 823 F.2d 1199, 1204 (7th Cir. 1987) (concluding that generalized confidential business information does not constitute protectable trade secrets); Thermal Zone Prod. Corp. v. Echo Eng'r, Ltd., 93 C 0556, 1993 WL 358148, at *5-6 (N.D. Ill. Sept. 14, 1993) (dismissing trade secret misappropriation claim because, although the plaintiff "made blanket generalizations regarding the information and documentation of their cooking ovens, they have failed to specify with any exactitude which pieces of information actually constitute trade secrets").

As for reasonable measures, RPG alleges that it "[took] all steps reasonably necessary to protect its confidential and proprietary and trade secret information from being disclosed." (Comp. ¶ 26) Yet, nowhere in the Complaint does RPG plead any measures to protect the alleged trade secret information. In this respect, this case is no different that Magellan. In that case, the plaintiff alleged, as RPG alleges in the Complaint, that its purported trade secrets were "sufficiently secret" and "the subject of reasonable efforts to maintain their secrecy." 76 F. Supp. 2d at 927. The court found that this allegation was insufficient and dismissed the claim because, although notice pleading "makes conclusory allegations permissible, such mere rote

repetition of the statutory language does not suffice." Id. (internal quotation and citation omitted); see also Abbott Lab. V. Chiron Corp., No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 21, 1997) (holding that complaint failed to state a trade secret misappropriation claim because "[a] complaint without any factual allegations regarding the plaintiff's efforts to maintain the confidentiality of their alleged trade secret cannot withstand a motion to dismiss") (citing cases).

RPG further alleges, solely upon information and belief only, that Davis will inevitably disclose trade secret information. (Compl. ¶ 46-49, 85.) This is not sufficient. In Teradyne, Inc. v. Clear Comm. Corp., the court rejected the sufficiency of similar allegations regarding threatened misuse:

> Here there is no allegation that defendants have in fact threatened to use Teradyne's secrets or that they will inevitably do so.
>
> *   *   *
>
> The defendants' claimed acts, working for Teradyne, knowing its business, leaving its business, hiring employees from Teradyne and entering the same field (though in a market not yet serviced by Teradyne) do not state a claim of threatened misappropriation. *All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will. This is not enough.* It may be that little more is needed, but falling a little short is still falling short.

707 F. Supp. 353, 356-57 (N.D. Ill. 1989) (emphasis added). The same is true in this case and the trade secret claim should be dismissed. See also Magellan Int'l Corp. v. Salzgitter Handel, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (dismissing complaint because an allegations that the defendant intends to sell same products to plaintiff's customers does not establish he will inevitably use the plaintiff's trade secrets to do so).

**F.    There Is No Independent Cause of Action for Preliminary and/or Permanent Injunctive Relief**

Finally, RPG attempts to state a cause of action for preliminary and permanent injunctive relief. This separate claim should be dismissed because an injunction "is a remedy, not a cause of action." Noah v. Enesco Corp., 911 F. Supp. 305, 307 (N.D. Ill. 1995); see also Randle v. City of Chicago, No. 00 C 299, 2000 WL 1536070, at *4 (N.D. Ill. Oct. 17, 2000) (granting motion to dismiss claim for injunctive relief because it is not an independent cause of action).

**V.    CONCLUSION**

For all of the foregoing reasons, Davis respectfully requests the Court to grant her Motion to Dismiss and dismiss each of RPG's claims with prejudice.

DATED: January 30, 2008                        Respectfully submitted,

James V. Garvey                                **KATHY DAVIS**
Frederic T. Knape
Vedder Price P.C.
222 North LaSalle Street                       By:   s/James V. Garvey
Suite 2600                                           One of Her Attorneys
Chicago, Illinois 60601-1003
T: (312) 609-7500
F: (312) 609-5005