IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RECYCLED PAPER GREETINGS, INC., an Illinois Corporation, <br><br>    Plaintiff/Counterdefendant, <br><br> v. <br><br> KATHY DAVIS, <br><br>    Defendant/Counterplaintiff. | No. 08 C 236 <br><br> Judge Bucklo <br><br> Magistrate Judge Denlow |

**COUNTERCLAIM FOR DAMAGES**

As and for her Counterclaim against Plaintiff/Counterdefendant, Recycled Paper Greeting Inc. ("RPG") pursuant to Federal Rule of Civil Procedure 13, Defendant/Counterplaintiff, Kathy Davis ("Davis"), states as follows:

    1.    This counterclaim for breach of contract arises out of a written license agreement whereby Davis granted RPG the right to sell Kathy Davis greeting cards and certain related social expression products. Among other obligations, the most recent license renewal of the license agreement required RPG to implement and maintain a Permanent Branded Collection of Kathy Davis greeting cards. This contract provision was a critical component of the parties' relationship going forward and RPG's failure to introduce a Permanent Branded Collection of Kathy Davis greeting cards, as required under the license renewal, has caused significant damage to Davis in the form of lost royalties in excess of $800,000.

    2.    Davis has since terminated the license agreement and, solely to prevent Davis from licensing her greeting cards to a competitor greeting card company (which Davis has the right to do under the license agreement), RPG brought suit against Davis, including a groundless

and vexatious trade secret misappropriation claim filed with an improper motive and without justification or cause. This counterclaim, accordingly, also seeks recovery under Section 5 of Illinois Trade Secret Act ("ITSA") (765 ILCS 1054/5) because RPG's trade secret misappropriation claim is made and pursued in bad faith.

## THE PARTIES

3. Davis is an individual who resides at 1045 Limekiln Pike, Ambler, Pennsylvania, 19002. Davis conducts business in her individual capacity and through Kathy Davis Designs, Inc. and Kathy Davis Studio, Inc. (together "KDI").

4. RPG is an Illinois corporation with its principal place of business at 111 North Canal Street, Suite 700, Chicago, Illinois 60606. RPG is in the business of selling greeting cards and related stationery products.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1332(a) because the citizenships of the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because RPG's principal place of business is located and a substantial part of the events giving rise to the Counterclaim occurred in this judicial district.

## GENERAL ALLEGATIONS

7. Davis is in the business of designing and creating images and artwork for greeting cards ("Kathy Davis greeting cards") and other social expression products. Davis conducts business primarily by licensing her images and artwork to third parties through the use of

licensing agreements that have been mutually developed and executed by Davis and her licensees. RPG is one such party.

## I. THE PARTIES BUSINESS RELATIONSHIP IS GOVERNED EXCLUSIVELY BY A LICENSE AGREEMENT

8. On or around November 20, 1990, KDI issued a license to RPG to sell Kathy Davis greeting cards and other related stationery products being produced by RPG at that time. This business relationship was governed exclusively by a License Agreement, which has been renewed from time to time.

9. Most recently, on or around March 22, 2006, the parties negotiated a license renewal to the License Agreement ("License Renewal"). The License Renewal commenced retroactively as of January 1, 2006 and was to continue for a period of seven (7) years.

10. Among other things, the License Renewal required RPG to maintain a Permanent Branded Collection of Kathy Davis greeting cards for the duration of the license. This entailed a collection of 36 Kathy Davis greeting cards within six months, 72 cards with one year, and 144 cards within 24 months and maintained throughout the duration of the license. The Collection was also to feature brandingand other relevant signage that depicted the Davis brand.

11. The License Renewal provided for Davis to be involved in marketing and promoting the sale of Kathy Davis greeting cards; to be involved in the design, development and presentation of new Kathy Davis greeting cards and introductions of those cards to RPG key accounts; and to pursue on her own any specific new product development or new business initiative that RPG chose not to participate in with Davis.

12. The License Renewal specifically allowed Davis to terminate the license at her sole discretion upon or prior to the first and second anniversary dates of the agreement. In the event Davis exercised this right to terminate the agreement, RPG would only be entitled to one

(1) year to sell off existing inventory for Kathy Davis everyday greeting cards, and two (2) years for existing inventory for Kathy Davis seasonal cards. This is referred to in the License Renewal as the "Sell Off Period." During the Sell Off Period, Davis would continue to receive the full royalty on all Kathy Davis greeting cards sold throughout the termination date.

13. All other terms and provisions that had been in place between the parties under the License Agreement not superceded by the License Renewal continued to remain in force. This included the provision in the original November 20, 1990 License Agreement and October 17, 1995 license renewal making clear that Davis owned all rights in Kathy Davis greeting cards provided to RPG under the license.

14. Neither the original License Agreement nor any subsequent renewal contains any restrictions against competition, customer solicitation or the use of alleged RPG trade secrets or confidential information.

**II.   RPG FAILED TO MAINTAIN A PERMANENT BRANDED COLLECTION OF KATHY DAVIS GREETING CARDS**

15. On numerous occasions since March 22, 2006, Davis addressed with RPG's management team her concern that the Permanent Branded Collection still had not been implemented or carried out by RPG. In fact, the topic of a Kathy Davis branded collection was a central agenda item for a number of meetings between the parties during calendar year 2007.

16. At no time, before or after expressing her concerns, did RPG implement or maintain the Permanent Branded Collection. Specifically, RPG did not implement an Initial Launch of 36 Kathy Davis greeting cards within 6 months, a Second Installment of 72 Kathy Davis greeting cards within 1 year, or a Permanent Installment of 144 Kathy Davis greeting cards within 24 months and maintained throughout the duration of the license.

**III.    THE PARTIES' SIGNATURE COLLECTION PROJECT WAS NOT CONFIDENTIAL OR AN RPG TRADE SECRET**

17.    On or around June 26, 2007, RPG discussed with Davis the idea of using a Kathy Davis branded collection platform to present a concept to a specific customer ("Customer") for a collection of Kathy Davis greeting cards referred to by RPG as the "Signature Collection" (or "Collection"). Davis discussed this idea with RPG given its continued neglect to market or promote Kathy Davis greeting cards through a branded collection or otherwise.

18.    Davis developed a proposed four-foot collection concept (consisting of 108 Kathy Davis greeting cards), created the signage and merchandising, and determined a mix of possible top-selling Kathy Davis greeting cards to comprise the Collection.

19.    On or about July 30, 2007, at a meeting in Chicago at RPG's corporate headquarters, Davis presented the Signature Collection to both the Customer and RPG. Ultimately, the Customer committed only to test launch the Signature Collection in less than 20% of its stores using 48 Kathy Davis greeting cards (with an additional 12 cards to be used as "substitutions" for future use in the Collection).

20.    Subsequently, Davis selected the specific Kathy Davis greeting cards to comprise the Signature Collection and created the visual layout for the Collection based, in part, on the sentiments requested by RPG. RPG's involvement thereafter consisted of reviewing historical sales data and productivity figures to provide feedback to KDI's selections and make suggestions for certain replacement cards for those previously selected by KDI.

21.    Fifty-four (54) of the 60 Kathy Davis greeting cards ultimately comprising the so-called Signature Collection were already available and active prior to the creation of this particular Collection. The Signature Collection represented merely a realignment of a limited number of Kathy Davis greeting cards, most of which the Customer already had been selling

prior to the launch of the Signature Collection in the same fixture locations at the Customer as other RPG cards are currently located.

22. Davis did not receive and was not made privy to any confidential information (including pricing, marketing or any trade secrets) of RPG in connection with the development of the Signature Collection or marketing efforts directed at the Customer. Davis was also not involved in any contract with the Customer, and was not privy to any financial transaction or direct financial obligation or liability in this regard.

23. The fact that the Signature Collection was going to be marketed to the Customer was not confidential and RPG never indicated—through a confidentiality agreement or otherwise—that such information should be treated confidentially. In fact, Davis had been marketing greeting cards via RPG for numerous years at the Customer and, as such, the patrons of the Customer were well familiar with Davis as a greeting card designer.

24. As early as September 2007, Davis disclosed the launch of the Signature Collection on the Internet through the Kathy Davis Blog to promote a successful product test launch. KDI also had in its studio a permanent card display of its designs, a subject of which featured mock ups of the entire Signature Collection on open display for visitors (including RPG representatives) to view.

25. Davis informed RPG of her various efforts to promote the test launch and Collection. RPG never objected to or expressed concern about any of Davis' promotional measures, and never indicated to Davis that it intended to keep the test launch or Signature Collection confidential or secret.

### IV. DAVIS EXPRESSED CONCERNS OVER HER BUSINESS RELATIONSHIP WITH RPG AND, ULTIMATELY, TERMINATED THE RELATIONSHIP

26. Beginning as early as November 2005, Davis and KDI had expressed concerns to RPG management with respect to, among other things, the parties' prior working relationship, internal competition, and RPG's potential sale and new strategic direction through its decision to employ new management, and the need for exposure of the Kathy Davis brand via a branded collection.

27. Due to RPG's inability to satisfy these concerns, Davis determined that it was necessary to include a termination right under the License Renewal at predetermined periods throughout the first two years of the agreement. Davis' concerns also resulted in a series of meetings and proposals between the parties regarding continuation of the parties' business relationship.

28. On November 8, 2007, the parties had a face-to-face meeting to address Davis' continuing concerns in light Davis' continued concerns regarding deficiencies in RPG's performance under the License Renewal and the approaching contract right for her to terminate the parties' relationship as of January 1, 2008.

29. Thereafter, in response to this meeting, RPG prepared a proposed "mutual agreement" on or around November 30, 2007 as a non-biding potential roadmap to attempt to preserve the parties' business relationship. This was not an agreement, and did not provide for any form of execution or verification by Davis.

30. KDI formally responded to RPG's proposal on December 14, 2007 and raised "several major issues that remain[ed] unaddressed" and "request[ed] additional information that was critical for [her] to consider a continuation of the current Agreement …"

31. Among other things, KDI concurred with RPG's assessment that its royalties had significantly declined in the past several years due to the lack of performance of RPG in its contractual obligation to deliver a Permanent Branded Collection under a specific schedule and quantity.

32. KDI also inquired about such things as how RPG would remit a form of compensation for the shortfall in revenue to KDI as a result of the absence of the Permanent Branded Collection and RPG's breach of contract for not launching the Permanent Branded Collection; RPG's proposal to improve the annual advance percentage and financial guarantees; and RPG's commitment to improving its marketing capabilities (including a detailed plan for featuring the Signature Collection beyond the Customer test launch and implementing other quality improvement initiatives).

33. KDI also emphasized their reservations going forward when Peter Walts, as agent for Davis expressed on her behalf when he specifically stated:

> As described above, these issues remain unclear from their description in your last document and require further clarification before KDI can consider a continuation of the current Agreement.
>
> As Kathy alluded to in her conversations with Mary, Jude and Mike, KDI has been approached by potential partners to market the KDI greeting cards and licensed product categories in the future, and we are actively considering these options. In order to effectively weigh these opportunities along with the current business relationship with RPG, it is imperative that we have more clarity from RPG in these critical areas.

34. Although KDI requested that RPG address the outstanding issues before December 20, 2007, RPG did not respond until December 27, 2007. In that correspondence, RPG acknowledged that it was not successful in delivering a [branded collection of Kathy Davis greeting cards] as quickly as [it] had hoped" and failed to adequately address the critical issues previously raised by KDI.

35. Accordingly, on December 28, 2007, KDI notified RPG in writing that Davis and KDI decided to terminate the parties' relationship based on an assessment of the working relationship between the parties, impact of changes in the management and policies of RPG, and changes in RPG's business philosophy and marketing strategies.

36. By letter dated January 25, 2008, Davis requested RPG to provide a full accounting for all existing inventory of everyday and seasonal cards, including as to each, the number and description of the licensed product RPG had on hand as of December 31, 2007. Davis also demanded RPG to immediately return all Kathy Davis designs, original artwork and any and all other creative material and property of any kind in RPG's possession belonging to Davis. To date, RPG has failed to provide an accounting or return Davis' property.

V. **RPG IS ATTEMPTING TO PREVENT DAVIS FROM LAWFULLY COMPETING BY LICENSING HER GREETING CARDS TO AMERICAN GREETINGS**

37. Davis is negotiating a license agreement with American Greetings to sell Kathy Davis greeting cards and related social expression products. This license agreement will not include, for the calendar year 2008, any of the 60 cards that comprised the Signature Collection. Davis has informed RPG of this fact.

38. Notwithstanding knowledge of this fact, RPG wrongly and without legal basis seeks to prevent Davis from licensing Kathy Davis greeting cards to another greeting card company.

39. In an effort to enjoin Davis, RPG claims that the existence of the Signature Collection and Customer commitment to test launch the Collection are its trade secrets despite the fact that both are public information and its knowledge that Davis does not intend to license the 60 Kathy Davis greeting cards that comprised the Signature Collection.

40. Copies of the documents specifically referred to herein have been previously filed manually under seal in the Declaration of Kathy Davis attached as Exhibit 1 to Defendant Kathy Davis' Memorandum in Opposition to Emergency Motion for Preliminary Injunction filed on January 22, 2008.

## COUNT I
## BREACH OF CONTRACT

41. Davis restates and re-alleges paragraphs 1 through 40 as and for this paragraph 41 of Count I.

42. Davis and RPG entered into valid and legally enforceable written License Agreement which has been renewed from time to time in writing as set forth herein, including as set forth in the License Renewal.

43. Davis performed all of her obligations under the License Agreement and subsequent renewals, including the License Renewal.

44. RPG breached the License Renewal by failing to maintain a Permanent Branded Collection of Kathy Davis greeting cards for the duration of the Licensing Renewal.

45. RPG's substantial nonperformance under the License Renewal entitles Davis to rescind the agreement and precludes RPG from having any Sell Off Period rights for existing inventory of Kathy Davis greeting cards.

46. Davis has suffered damages in excess of $800,000 in the form of lost royalties as a direct and proximate result of RPG's material breaches of the License Renewal.

**WHEREFORE**, Davis respectfully requests the Court to enter judgment in her favor on Count I, and (i) rescind the License Renewal and/or alternatively, award Davis compensatory damages in an amount to be proved at trial; (ii) costs of bringing this counterclaim; and (iii) such further relief as is just and proper.

## COUNT II
## BAD FAITH TRADE SECRET CLAIM

47. Davis restates and re-alleges paragraphs 1 through 40 as and for this paragraph 47 of Count II.

48. On or about January 10, 2008, RPG filed the present action. In Count V of its Complaint, RPG alleges, among other things, that Davis misappropriated its trade secrets.

49. RPG does not identify its trade secrets with any particularly. Rather, RPG alleges broadly that the existence of the Signature Collection and Customer commitment to test launch the Collection are its trade secrets. RPG also alleges that Davis had access to certain RPG confidential information, including business plans, market research, market studies, pricing plans, personnel strategies and consumer strategies.

50. RPG's trade secret misappropriation claim is objectively specious because RPG cannot reasonably believe that any of this information constitutes a trade secret, or that Davis has or inevitable will disclose any such information, for each of the following reasons:

   (a) RPG acknowledged in the License Agreement and subsequent renewals that Davis exclusively owns all rights in the Kathy Davis greeting cards which comprise the Signature Collection;

   (b) the existence of the Signature Collection and Customer commitment to test launch the Collection is and has been public knowledge;

   (c) Kathy Davis greeting cards have been featured at Customer locations for years, including as a "collection," and the presence of those cards at the Customer, regardless of their arrangement on the racks, is public knowledge;

   (d) RPG cannot claim any protectable interest in the concept of a "collection" of Kathy Davis greeting cards which is not confidential or trade secret information of RPG;

   (e) The existence of the Signature Collection and Customer commitment to test launch the Collection was not considered confidential and RPG never objected to or expressed any concern about the various measures Davis took to promote the test launch and the Collection;

    (f)    RPG did not take any affirmative steps to maintain the secrecy of the Signature Collection or Customer commitment to test launch the Collection;

    (g)    RPG never indicated to Davis, through a confidentiality agreement or otherwise, that the Signature Collection or Customer commitment and/or roll out plans were intended to be confidential;

    (h)    Despite its knowledge, RPG never objected to or expressed concern about any of the various efforts Davis took to promote the Signature Collection and Customer commitment to test launch the Collection;

    (i)    RPG is aware that Davis has no intention during calendar year 2008 to license, or otherwise market or sell, any of the 60 Kathy Davis greeting cards that comprised the Signature Collection to or through American Greetings or any other entity; and

    (j)    There is no evidence that Davis has disclosed, and no legal basis to conclude that she inevitably will disclose, any purported confidential information or trade secret of RPG.

51.    RPG's trade secret misappropriation claim is being pursued solely for an improper purpose to retaliate against Davis for terminating the parties' business relationship and to enjoin Davis from lawfully competing by licensing her greeting cards as a collection to American Greetings, who is RPG's main competitor.

52.    Section 5 of the ITSA authorizes the Court to award attorneys' fees to the prevailing party if a trade secret misappropriation claim is made in bad faith.

53.    As a direct and proximate result of RPG's bad faith trade secret misappropriation claim, Davis has been required to expend and continue to expend attorneys' fees to defend herself from RPG's bad faith claim.

54.    Davis is therefore entitled to an award of her attorneys' fees pursuant to Section 5 of the ITSA.

**WHEREFORE**, Davis respectfully requests the Court to enter judgment in her favor on Count II, and award her (i) an amount equal to the attorneys' fees that she is forced to expend defending against this action; (ii) costs of bringing this counterclaim; and (iii) such further relief as is just and proper.

DATED: February 1, 2008

Respectfully submitted,

**KATHY DAVIS**

By:　s/ James V. Garvey　　　　　
　　　One of Her Attorneys

James V. Garvey
Frederic T. Knape
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601-1003
T: (312) 609-7500
F: (312) 609-5005