IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RECYCLED PAPER GREETINGS, INC., an Illinois corporation, | |
| Plaintiff/Counterdefendant, | No. 08 C 236 |
| v. | Judge Elaine B. Bucklo |
| KATHY DAVIS, | Magistrate Judge Morton Denlow |
| Defendant/Counterplaintiff. | |

**DEFENDANT KATHY DAVIS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS**

**I.      INTRODUCTION**

Plaintiff Recycled Paper Greetings, Inc. ("RPG") filed a First Amended Complaint in response to Defendant Kathy Davis' ("Davis") original motion to dismiss and the Court's February 1, 2008 Memorandum Opinion and Order denying RPG a temporary restraining order. While RPG now attempts to plead "facts" wholly inconsistent with and directly contrary to its purported "Verified" Complaint for Injunctive and Other Relief ("Complaint"), RPG's claims remain legally deficient and unsupportable.

As demonstrated herein, each claim fails to state a cause of action upon which injunctive or any other relief may be granted and should be dismissed for, at least, the following reasons:

- The breach of written contract claim fails because the license agreement, various license renewals and Davis' termination letter refute RPG's allegations to the contrary and defeat the claim as a matter of law. The declaratory judgment claim fails for this same reason. Furthermore, any implied covenant of good faith and fair dealing is not a source of contractual duties or liability and does not support an independent cause of action for breach of contract.

- RPG attempts to plead breach of a purported oral joint venture contract between Davis, RPG *and* Target, but fails to join Target who—if RPG's new allegations

- are to be believed—is a necessary and indispensable party-plaintiff. In addition, RPG fails to plead the existence of any joint venture because nowhere does or can it allege: (a) any duty or agreement to share profits and losses; (b) that Davis had any right to exercise control over the enterprise or direct and govern the conduct of RPG and Target; and/or (c) that RPG had any right or ability to create liabilities with third parties that would bind Davis as a joint venturer.

- RPG cannot plead reliance to support either an intentional or negligent misrepresentation claim because, as a matter of law, RPG could not justifiably rely upon an alleged non-binding oral statement of future intention in the face of a contradictory writing and an express contract provision that gave Davis the unconditional and unqualified right to terminate the parties' relationship.

- The trade secret misappropriation claim is insufficient because RPG does not allege any measures to protect its purported trade secrets. Nor does RPG plead threatened use or inevitable disclosure of any purported trade secret other than "upon information and belief," which is not sufficient.

- RPG does not allege any relationship other than a contractual license arrangement and, therefore, does not and cannot plead that Davis owed RPG any fiduciary duty. RPG cannot plead around this by attempting to recast the written contract as an oral joint venture agreement or special confidential relationship giving rise to a fiduciary relationship.

- A non-binding, equivocal oral statement of future intention is not an unambiguous promise to support a promissory estoppel claim and, as with the misrepresentation claim, RPG cannot plead reasonable reliance in the face of a contradictory writing from Davis and because the March 22, 2006 license renewal granted Davis a clear and absolute right to terminate the relationship.

- RPG cannot state an independent claim for preliminary and permanent injunction because injunctive relief is a remedy and not a cause of action.

## II.  FACTUAL BACKGROUND[1]

On or around November 20, 1990, Davis issued a license to RPG to sell her greeting cards and other related stationery products being produced by RPG at that time. (First Am. Compl. ¶ 16 & Exhibit A.) This business relationship was governed by a license agreement, which had been renewed from time to time. (Id. Exhibits A-D.)

---

[1] The well-pleaded allegations of the Complaint are taken as true solely for purposes of the Motion to Dismiss as required under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). As noted above, however, many of RPG's "new" allegations are entirely contradictory of the allegations contained in RPG's original "verified" complaint.

Most recently, on or around March 22, 2006, the parties negotiated a license renewal. (Id. Exhibit D.) This license renewal commenced retroactively as of January 1, 2006 and was to continue for a period of seven (7) years. (Id.) This license renewal also specifically allowed Davis to terminate the license at her sole discretion, as follows:

> [Davis] shall have the right to terminate this agreement, upon the first and second anniversary dates [i.e., January 1, 2007 and January 1, 2008] of the agreement … [r]ight to terminate shall be at the sole discretion of [Davis], based on an assessment of the working relationship between [Davis] and RPG, and the impact of any changes in the management or policies of RPG.

(Id.) All other terms and provisions that had been in place between the parties under the license agreement not superceded by the March 22, 2006 renewal remained in force. (Id.) This included the provision in the original November 20, 1990 license agreement and October 17, 1995 license renewal making clear that Davis owned all rights in Kathy Davis greeting cards provided to RPG under the license. (Id. Exhibits A & B.) Neither the original license agreement nor any subsequent renewal contains any restrictions against competition, customer solicitation or the use of alleged RPG trade secrets or confidential information. (Id. Exhibit A-D.)

RPG alleges that, beginning in November 2007, Davis and RPG began discussing their continuing relationship in light of Davis' contract right to terminate the relationship effective January 1, 2008. (Id. ¶ 50.) According to RPG, Davis spoke with Mr. Keiser in early December 2007 and allegedly indicated that she "intended to remain under contract with RPG." (Id. ¶¶ 60, 99, 126.) Peter Walts (who is Davis' husband and Vice President of Kathy Davis Designs, Inc. ("KDI")) sent a letter on December 14, 2007 on behalf of Davis. (Id. Exhibit F.) That letter provided in relevant part:

> Kathy, John and I reviewed your recent email describing a proposed "Mutual Agreement" between [Davis] and RPG. While we can certainly appreciate your efforts in drafting this document, there are several major issues that remain unaddressed. With this in mind, *please consider this document as a formal written request for additional information that is critical for [Davis]*

> *to consider a continuation of the current Agreement, which is currently under review for continuation of the remaining five (5) year term to commence on January 1, 2008.*
>
> \* \* \*
>
> As [Davis] alluded to in her conversations with Mary, Jude and Mike, [she] has been approached by potential partners to market [her] greeting cards and licensed product categories in the future, and we are actively considering these options. In order to effectively weigh these opportunities along with the current business relationship with RPG, it is imperative that we have more clarity from RPG in these critical areas. *We know that your team is aware the [Davis] termination option in the Agreement expires on December 31, 2007, so please address the above issues in detail, and respond in writing on or before Thursday, December 20, 2007.*

(Id. (emphasis added).)

KDI and Davis requested that RPG address the outstanding issues before December 20, 2007 in light of Davis' option to terminate, RPG did not respond until December 27, 2007. (Id. Exhibit G.) In that correspondence, RPG acknowledged that "it was not successful in delivering the "Scatter Joy" showcase as quickly as [it] had hoped" and failed to address issues raised in the December 14, 2007 letter. (Id. Exhibits F & G.) Accordingly, by letter dated December 28, 2007, Davis notified RPG that she was electing to exercise her right to terminate the parties' relationship on January 1, 2008 under March 22, 2006 license renewal. (Id. ¶ 79; a true and correct copy of December 28, 2007 termination letter is attached hereto as **Exhibit 1**.)[2]

## III. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. FED. R. CIV. P. 12(b)(6). In doing so, the court should accept as true all well-pleaded factual allegations and any reasonable inferences apparent on the face of the complaint. See, e.g., Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 521 (7th Cir.2001).

---

[2] The Court may consider the December 28, 2007 termination letter because it is specifically referred to and relied upon by RPG in the First Amended Complaint. See, e.g., Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).

This does not mean that the court is required to accept conclusions of law or conclusions of fact not supported by allegations of specific facts.  Id.  Ultimately, dismissal is appropriate if the plaintiff puts forth no set of facts that would entitle him to relief.  Griffin v. Sutton Ford, Inc., 452 F. Supp. 2d 842, 845 (N.D. Ill. 2006).

**IV.    ARGUMENT**

    **A.    The License Agreement Terms Contradict RPG's Allegations and RPG Cannot Allege Any Breach of Written Contract by Davis**

The breach of written contract claim should be dismissed because the various license renewals and the termination letter contradict RPG's allegations and defeat this claim as a matter of law.  See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463, 466 (7th Cir. 2007); see also Whirlpool Fin. Corp. v. GN Holdings, Inc., 873 F. Supp. 111, 123 fn.18 (N.D. Ill. 1995) (concluding on a motion to dismiss that, "where as here an exhibit contradicts the assertions made in the complaint itself and reveals facts that foreclose recovery as a matter of law, the exhibit controls").

Specifically, RPG alleges that Davis breached the written contract because she "purported to terminate … on a date not permitted under the license agreement."  (First Am. Compl. ¶ 90.)  According to RPG, Davis was required to terminate the license agreement on January 1, 2008."  (Id. ¶ 79.)  The termination provision in the March 22, 2006 license renewal and Davis' termination letter refute these allegations.  The termination provision provides that Davis "shall have the right [in her sole discretion] to terminate this agreement upon the first and second anniversary dates of the agreement."  (Id. Exhibit D.)  In the termination letter, which RPG does not attach to the First Amended Complaint, Davis provided notice of termination in unequivocal terms:

> I am choosing by this letter to exercise my option to terminate the current contract with RPG *as provided in the Term and Termination provision of our agreement dated March 22, 2006.*"

(Exhibit 1 (emphasis added).) The termination letter is not rendered ineffective because it was dated and provided notice of termination on December 28, 2007 rather than "upon" January 1, 2008. Under the termination provision and by operation of law, the termination occurred and became effective on January 1, 2008.[3]

RPG also alleges that Davis breached the written contract because she "has or is attempting to license her greeting card designs to American Greetings." (First Am. Compl. ¶ 90.) RPG claims that, pursuant to the October 17, 1995 license renewal, the parties' relationship became an "exclusive" arrangement. (Id. ¶ 19.) Here again, the October 17, 1995 license renewal refutes RPG's allegation, as follows:

> Over the years, we've modified our *non-exclusive agreement* as follows: RPG is definitely the *primary* greeting card publisher of your cards and you have *avoided* working with any companies that compete directly with RPG in the retail marketplace.

(Id. Exhibit B (emphasis added).) This provision, which RPG drafted, states that the relationship was "non-exclusive" and, at a minimum, does not specifically state that it was modified to become "exclusive." The fact that RPG was Davis' "primary" greeting card publisher and that Davis "avoided" working with any other companies did not prevent Davis from doing so under the contract. Moreover, Davis' termination of the parties' relationship renders any purported "exclusivity" moot with respect to any post-termination dealings with American Greetings.

---

[3] RPG also seeks a declaratory judgment that Davis breached the license agreement by allegedly "fail[ing] to terminate the license agreement in accordance with the terms of that agreement." (First. Am. Compl. ¶ 136.) This claim is no different than the breach of written contract claim and should be dismissed for the same reasons.

RPG further alleges that Davis breached the implied covenants of good faith and fair dealing. (First Am. Compl. ¶¶ 91-92.) In this regard, the breach of written contract claim should be dismissed because the implied covenant of good faith and fair dealing does not support an independent cause of action for breach of contract. It is merely "an aid to interpretation" and "not a source of contractual duties or liability." Zeidler v. A & W Restaurants, Inc., 301 F.3d 572, 575 (7th Cir. 2002); see also Trading Tech., Inc. v. Refco Group Ltd., LLC, No. 05 C 1079, 2006 WL 794766, at *2-3 (N.D. Ill. Mar. 23, 2006) (dismissing breach of contract counterclaim and recognizing that "[n]o recent Illinois or Seventh Circuit case has allowed a breach of contract claim to rely solely on the covenant of good faith and fair dealing," even where the defendant alleged that the plaintiff "had a bad faith motive for ending [the] relationship").

### B. RPG Does Not Join a Necessary and Indispensable Party or Plead the Existence of an Oral Joint Venture Agreement

RPG alleged in the original "verified" Complaint that the parties' purported joint venture was memorialized in the March 22, 2006 license renewal. (Compl. ¶¶ 27-33.) Directly contradicting this earlier factual allegation, RPG now inconsistently alleges that "RPG and Davis entered into and Davis breached an "oral" joint venture agreement "[w]holly separate and apart from the March 22, 2006 license renewal." (First Am. Compl. ¶¶ 27, 29, 54, 95.) RPG also alleges that Target was a party to the oral joint venture agreement. (Id. ¶ 35.)

This claim should be dismissed for failure to join a necessary and indispensable party under FRCP 19 because, as RPG alleges, Target was a party to the purported oral joint venture agreement but is not a party to the breach of oral contract claim. Elmhurst Consulting, LLC v. Gibson, 219 F.R.D. 125, 127-28 (N.D. Ill. 2003) (concluding that a party to a contract is a necessary and indispensable party and, therefore, dismissing breach of contract claim for failure to join a party to the contract at issue). As the Court emphasized in Elmhurst, to allow this claim

to proceed without Target as a party-plaintiff may improperly subject Davis "to multiple adverse judgments arising from the same actions under the same contract." Id. at 128 (adding that a party to a contract is the "paradigmatic example of an indispensable party").

This claim also should be dismissed because RPG does not plead the required elements of an oral joint venture agreement. In order to plead a joint venture, RPG must allege: (1) an agreement to carry on a single enterprise with a legitimate purpose; (2) a community of interest in the purpose; (3) expectation of profits; (4) duty to share profits and losses; and (5) the right of each person to direct and govern conduct of the other members of the venture. See, e.g., First Mfr. Computer Outlet v. Sears Roebuck and Co., No. 06 C 3975, 2007 WL 1455830, at *2 (N.D. Ill. May 11, 2007) (slip copy).

Nowhere, for example, does RPG allege any duty or agreement to share profits and losses and, as the court held in Industrial Hard Chrome v. Hetran, Inc., this is fatal to RPG's claim. 90 F. Supp. 2d 952, 955 (N.D. Ill. 2000) (dismissing joint venture claim where the plaintiff "has not alleged that there was a duty to share profits or losses"). In fact, the court in Industrial Hard Chrome emphasized that "the *most important element* of a joint venture is that the joint venturers have agreed to share in both profits and losses." Id. (emphasis added); see also Barrett v. Poag & McEwen Lifestyle Centers-Deer Park Town Ctr., LLC, No. 98 C 7783, 1999 WL 691850, at *6 (N.D. Ill. Aug. 26, 1999) (dismissing joint venture claim where the plaintiff did not allege any provision for the joint sharing of profits and losses).

Nor does RPG allege that Davis had the right to exercise control over the enterprise or direct and govern the conduct of RPG and/or Target. Rather, RPG only alleges that Davis "assisted RPG with the development and pitching of the Signature Collection [to Target]; "contributed art and designs for the card collection;" and "gave RPG the right to use her name,

-8-

image … and the trademarked phrase 'Scatter Joy.'" (First Am. Compl. ¶¶ 31-32.) These allegations are not sufficient to plead a joint venture.

In dismissing a joint venture claim, the court in <u>Quadro Enter., Inc. v. Avery Dennison Corp.</u> rejected the sufficiency of similar allegations:

> Quadro has not adequately alleged that Avery possessed some degree of joint proprietorship or mutual right to exercise control over the enterprise. The legal requirement of a right to manage or control has been interpreted as requiring some right by the parties to direct and govern the conduct of each other in connection with the joint venture. Based on the facts plaintiff alleges, *Avery was simply responsible for producing and printing the subject work at Quadro's behest, so that Quadro could sell the finished label sheets directly to State Farm.* Nowhere does plaintiff indicate that Avery had any authority in the alleged joint venture of producing and selling label sheets to State Farm.

No. 97 C 5402, 1997 WL 769345, at *3 (N.D. Ill. Dec. 5, 1997) (emphasis) (internal citations and quotation omitted). Likewise, while RPG alleges that "Davis supplied her card designs … and agreed to allow RPG to use her name and the Scatter Joy name," RPG alleges that "[it], not Davis, had Target as a client" and that "[it], not Davis, was to pay for the allotted shelf space, as well as the costs of manufacturing and distributing the Cards." (First Am. Compl. ¶ 39.) RPG does not allege that Davis had any authority to deal directly with or sell greeting cards to Target on behalf of the enterprise. Instead, as in <u>Quadro</u>, RPG merely alleges "the existence of a rather straightforward commercial relationship between [licensor] and [licensee]." 1997 WL 769345, at *3. This does not give rise to a joint venture.

In addition, RPG does not plead, as it must, that it had the ability to create liabilities with third parties that would bind Davis as a joint venturer. As the court stated in <u>Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.</u>, this is an "essential element" of both joint ventures and partnerships and, for this very reason, the court determined that the plaintiff failed to establish the existence of a fiduciary duty through a joint venture relationship. No. 05 C 5488, 2005 WL

-9-

3180147, at *4-6 (N.D. Ill. Nov. 23, 2005); see also O'Brien v. Cacciatore, 227 Ill. App. 3d 836, 845, 591 N.E. 2d 1384, 1390 (1st Dist. 1992) (holding that a joint venture requires that "all partners or joint ventures are liable jointly for all debts and obligations of the partnership or venture"). Each of these reasons warrants dismissal of the joint venture claim.

### C.  RPG Cannot Plead Justifiable Reliance to Support a Misrepresentation Claim

The basis for RPG's misrepresentation claim is that "Davis represented to RPG in early December 2007 that she intended to remain under contract with RPG" and that RPG reasonably relied on that statement. (First Am. Compl. ¶¶ 99, 103.) At the same time, RPG also attaches the December 14, 2007 letter which made expressly clear that Davis had not yet made any commitment to remain under contract with RPG and was considering her option to terminate. (Id. Exhibit F.) These allegations cannot support a misrepresentation claim as a matter of law. To plead an intentional or negligent misrepresentation claim, RPG must allege, among other things, that Davis made a false statement of material fact and that RPG justifiably relied on the truth of the statement. See, e.g., Quinn v. McGraw-Hill Co., Inc., 168 F.3d 331, 335 (7th Cir. 1999). Here, even assuming that Davis "indicated" in early December 2007 that she "intended" to continue a business relationship, which Davis did not, RPG cannot reasonably rely upon that alleged equivocal statement in light of the December 14, 2007 letter and because the March 22, 2006 license renewal gave her the right to terminate up to and including January 1, 2008.[4]

The court in Runnemede Owners, Inc. v. Crest Mortgage Corp. dismissed a fraudulent misrepresentation claim under similar circumstances. 861 F.2d 1053, 1058-59 (7th Cir. 1988).

---

[4] Perhaps most ironically, while RPG attempts to deny Davis the right to provide three-days advance notice of her termination effective on January 1, 2008, RPG attempts to allege that it relied upon a purported statement by Davis in early December 2007 that she did not intend to terminate the relationship. (First Am. Compl. ¶ 99.)

-10-

In that case, the plaintiff claimed that it reasonably relied on a mortgage company's oral statement that the parties "had a deal." The court disagreed because the parties' letter of commitment "only bound [the mortgage company] to *consider* extending a loan to [the plaintiff] under certain specified conditions." Id. at 1059. The court stated:

> Contracts would be become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements. And the give-and-take of negotiations would become meaningless if, after making concessions in order to obtain other contractual protections, a knowledgeable party is later able to reclaim what it had given away by alleging that it had, in fact, relied not on the writing but on the prior oral statements.

Id. On this basis, the court concluded that experienced businessmen should proceed "with caution when confronted with oral representations inconsistent with the written terms of [a] contract" and held that the plaintiff could not establish reasonable reliance as a matter of law when the contract directly contradicted the alleged oral misrepresentations. Id.

The same result is appropriate here. RPG alleges that it was aware of Davis' right to terminate the relationship (First Am. Compl. ¶ 48) but does not, and cannot, allege that Davis made any unequivocal statement that she would not exercise her right to terminate. Barring any such statement, the misrepresentation claim should be dismissed because it is nothing more than an improper attempt to prevent Davis from exercising her contract right based on a non-binding equivocal statement of her future intention (which is also contradicted by at least one writing). See also Frahm v. Equitable Life Assurance Society, 137 F.3d 955, 961 (7th Cir. 998) (holding that plaintiffs could not satisfy reliance element when health plan summaries explicitly reserved for defendant the right to change the plan).[5]

---

[5] RPG alleges in the alternative that Davis "failed to disclose or provide adequate information to RPG while under a duty to provide such information." (First Am. Compl. ¶ 102.) As demonstrated in Sections A, B and E, the only relationship pled by RPG is a contractual one which does not impose any fiduciary duty or other duty of disclosure, including informing RPG "that she was meeting with and listening to offers from American Greetings." (Id.)

### D. The Trade Secret Misappropriation Claim Is Insufficient as a Matter of Law

RPG seeks to impose liability under the Illinois Trade Secret Act (765 ILCS 1065/1 et seq.) ("ITSA") on the alleged basis that the Signature Collection of Kathy Davis greeting cards is an RPG trade secret. (First Am. Compl. ¶¶ 38, 108-111.) The ITSA provides in relevant part:

> (d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> \* \* \*
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). Accordingly, in addition to identifying purported trade secrets, RPG must allege, among other things, that it took reasonable measures to maintain the "secrecy" of the alleged trade secrets. Id.; see also Magellan Int'l Corp. v. Salzgitter Handel GmbH, 76 F. Supp. 2d 919, 926-27 (N.D. Ill. 1999).

While RPG alleges that its purported trade secret "was subject to reasonable security measures to maintain secrecy and confidentiality" (First Am. Compl. ¶ 114), nowhere in the First Amended Complaint does RPG plead any measures to protect the alleged trade secret information. RPG's trade secret claim is no different than that in Magellan and, as in that case, RPG's claim should be dismissed. In Magellan, the plaintiff alleged that its purported trade secrets were "the subject of reasonable efforts to maintain their secrecy." 76 F. Supp. 2d at 927. The court found that this allegation was insufficient and dismissed the claim because, although notice pleading "makes conclusory allegations permissible, *such mere rote repetition of the statutory language does not suffice*." Id. (internal quotation and citation omitted) (emphasis added); see also Abbott Lab. V. Chiron Corp., No. 97 C 0519, 1997 WL 208369, at \*3 (N.D. Ill. Apr. 21, 1997) (dismissing trade secret claim because "[a] complaint without any factual

allegations regarding the plaintiff's efforts to maintain the confidentiality of their alleged trade secret cannot withstand a motion to dismiss") (citing cases).

RPG further alleges, *solely upon information and belief only*, that Davis will inevitably disclose trade secret information. (First Am. Compl. ¶¶ 84, 115.) This is not sufficient. In Teradyne, Inc. v. Clear Comm. Corp., the court rejected the sufficiency of similar allegations regarding threatened misuse that were not pled upon information and belief:

> Here there is no allegation that defendants have in fact threatened to use Teradyne's secrets or that they will inevitably do so.
>
> \* \* \*
>
> The defendants' claimed acts, working for Teradyne, knowing its business, leaving its business, hiring employees from Teradyne and entering the same field (though in a market not yet serviced by Teradyne) do not state a claim of threatened misappropriation. *All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will. This is not enough.* It may be that little more is needed, but falling a little short is still falling short.

707 F. Supp. 353, 356-57 (N.D. Ill. 1989) (emphasis added). The same is true in this case. At best, RPG alleges nothing more than a fear that Davis will misuse its purported trade secrets. Accordingly, the trade secret claim should be dismissed. See also Magellan Int'l Corp. v. Salzgitter Handel, 76 F. Supp. 2d 919, 927 (N.D. Ill. 1999) (dismissing trade secret claim because an allegations that the defendant intends to sell same products to plaintiff's customers does not establish he will inevitably use the plaintiff's trade secrets to do so).

    **E.**    **Davis Did Not Owe RPG Any Fiduciary Duty Beyond the Obligations Encompassed in the Written Contract**

As previously demonstrated, RPG does not allege any relationship other than a contractual license arrangement. (See, supra, §§ A, B.) Therefore, RPG cannot plead a claim for breach of fiduciary duty as a matter of law because "parties to a contract do not owe a fiduciary duty to one another." Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc., No. 05 C 5488,

2005 WL 3180147, at *7 (N.D. Ill. Nov. 23, 2005); see also Prescott v. Allstate Life Ins. Co., 341 F. Supp. 2d 1023, 1028 (N.D.Ill.2004) (dismissing fiduciary duty claim where a contract defined the parties' respective duties and obligations).[6]

### F.  RPG Does Not Allege an Unambiguous Promise and Cannot Plead Reasonable Reliance to Support a Promissory Estoppel Claim

In order to plead a claim for promissory estoppel, RPG must allege an unambiguous promise and detrimental reliance. See, e.g., Guaranty Residential Lending, Inc. v. International Mortgage Ctr., Inc., 305 F. Supp. 2d 846, 866 (N.D. Ill. 2004). As in its misrepresentation claim, RPG alleges that Davis promised that she "intended to remain under contract with RPG" and that RPG "relied on that promise." (First. Am. Compl. ¶¶ 126, 128.) Even assuming Davis made this alleged statement, RPG's promissory estoppel claim is insufficient and should be dismissed. (See also, supra, p. 11 fn.5.)

First, in order to state a promissory estoppel claim, the unambiguous promise must be definite and not, as in this case, a statement of future intention. Garwood Packaging, Inc. v. Allen & Co., Inc., 378 F.3d 698, 702 (7th Cir. 2004) (emphasizing that "the promise relied on to trigger an estoppel must be definite in the sense of being clearly a promise *and not just a statement of intentions*") (emphasis added); Hayes & Griffith, Inc. v. GE Capital Corp., No. 88 C 10179, 1989 WL 135246, at *7 (N.D. Ill. 1989) (dismissing promissory estoppel claim because the statement that the defendant "could provide all of the financing needs of [the plaintiff] with

---

[6] RPG also seeks to impose a fiduciary duty "by virtue of the highly confidential information [Davis] possesses." (First. Am. Compl. ¶ 119.)  This argument was expressly rejected in Quadro where the court held that, even when one party trusts another with its confidential information, a fiduciary relationship does not result unless that party "relies heavily on the judgment of another." 1997 WL 769345, at *4.  Nowhere does RPG allege, nor can it allege, that it "relied heavily on the judgment of Davis or that Davis "gained any superiority and influence" over it.  See also American Hardware Mfg. Assoc. v. Reed Elsevier, Inc., No. 03 C 9421, 2004 WL 3363844, at *11-12 (N.D. Ill. Dec. 28, 2004) (dismissing fiduciary duty claim because the plaintiff did not allege any facts indicating that the defendant held a dominant position over the plaintiff to establish a special relationship).

the short time frame demanded *was merely a statement of intention*, and not a promise that can be enforced") (emphasis added).

Second, like the misrepresentation claim, RPG cannot plead that it reasonably relied upon the alleged promise because the December 14, 2007 letter made expressly clear that Davis had not yet made any commitment to remain under contract with RPG and was considering her option to terminate. (First Am. Compl. Exhibit F.) Moreover, the termination provision in the March 22, 2006 license renewal granted Davis a clear and absolute right to terminate the relationship. For this very reason, the court in Hayes dismissed a promissory estoppel claim because the reliance on the alleged promise was not reasonable as a matter of law where the promise was inconsistent with the terms of the parties' contract. 1989 WL 135246, at *7 (citing Runnemede, 861 F.2d at 1059); see also Thacker v. Menard, Inc., 105 F.3d 382, 385 (7th Cir. 1997) (concluding that the plaintiff could not reasonably rely upon on alleged oral representations which contradicted express terms of a writing).

### G. There Is No Independent Cause of Action for Preliminary and/or Permanent Injunctive Relief

Finally, RPG attempts to state a cause of action for preliminary and permanent injunctive relief. This separate claim should be dismissed because an injunction "is a remedy, not a cause of action." Noah v. Enesco Corp., 911 F. Supp. 305, 307 (N.D. Ill. 1995); see also Randle v. City of Chicago, No. 00 C 299, 2000 WL 1536070, at *4 (N.D. Ill. Oct. 17, 2000) (granting motion to dismiss claim for injunctive relief because it is not an independent cause of action).

### V. CONCLUSION

For all of the foregoing reasons, Davis respectfully requests the Court to grant her Motion to Dismiss and dismiss the First Amended Complaint with prejudice.

| | |
|---|---|
| DATED: February 25, 2008 | Respectfully submitted, |
| | |
| James V. Garvey | **KATHY DAVIS** |
| Frederic T. Knape | |
| Vedder Price P.C. | By:\_\_s/James V. Garvey_____ |
| 222 North LaSalle Street | One of Her Attorneys |
| Suite 2600 | |
| Chicago, Illinois 60601-1003 | |
| T: (312) 609-7500 | |
| F: (312) 609-5005 | |